THE VIRGINIA AND TRUCKEE RAILROAD COMPANY, RESPONDENT, *v.* A. B. ELLIOTT, APPELLANT.

RAILROAD CONDEMNATION OF LAND — QUANTITY. The Railroad Act of 1865 (Stats. 1864–5, 427, Sec. 20) prescribes that State land along the line of a road may be taken for the building of depots and other necessary buildings on payment of the value thereof, provided no such piece of land taken shall exceed two acres in extent: *Held*, that this limitation of two acres does not apply to lands of individuals, and that in regard to such lands a larger quantity, if necessary, may be condemned.

EXPRESSIO UNIUS EXCLUSIO ALTERIUS. It is the presumption, when one person or thing is expressly mentioned in a statute, that all other persons and things are to be excluded.

SETTING ASIDE OF REPORT OF RAILROAD COMMISSIONERS. The Railroad Act of 1865 (Stats. 1864–5, 427, Sec. 31) provides that, when land is taken and the

The Virginia and Truckee Railroad Company *v.* Elliott.

Commissioners make their report, if any party be dissatisfied he may "move to set aside the report, and to have a new trial as to any tract of land, upon good cause shown therefor; and the said Court or Judge shall set aside the report as to such tract of land": *Held,* that the meaning was, not that the report should be set aside as a matter of course, because of dissatisfaction, but only on good cause shown.

RAILROAD DEPOTS AND BUILDINGS— HOW MUCH LAND NECESSARY. The question as to the quantity of land which, under the Railroad Act, a company may take on the ground of its being necessary for its depots and other buildings, must be determined by the evidence produced, and depends upon many facts and circumstances for which there is no exact standard.

VALUATION BY COMMISSIONER OF LAND TAKEN FOR RAILROADS. The valuation of lands taken for railroad purposes by commissioners appointed under the Railroad Act will not be disturbed, if there be any substantial testimony to support it.

NECESSITIES OF RAILROADS NOT TO BE CONSIDERED IN VALUING LAND TAKEN. In awarding the compensation to be paid for land taken by a railroad company, its full actual value should be given: and in ascertaining such value everything generally, which actually enhances its present worth, should be taken into consideration, but not the fact that it is necessary or indispensable for the railroad to have it.

CONSTITUTION—POWER TO APPOINT RAILROAD COMMISSIONERS. On objection made that the appointment of commissioners to fix compensation for land taken for railroad purposes was a matter pertaining under the Constitution to the executive, and could not be exercised by the judicial department: *Held,* that, as the Constitution does not point out the manner in which private property shall be taken, the Legislature has the power to prescribe any method which will produce a just and fair result, and that there was no more reason why the commissioners should be appointed by the executive than by the judiciary.

OBJECTIONS NOT TAKEN BELOW NOT AVAILABLE IN APPELLATE COURT. On appeal from an award of compensation for land taken for railroad purposes, objections that the commissioners did not meet at the time fixed, and did not file their report within the period allowed by the Court, cannot be taken for the first time in the Appellate Court.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*A. B. Elliott, in pro. per.,* for Appellant.

I. It may be said that the proviso of section twenty of the Railroad Statute of 1865, "that no one depot, watering-place, machine or work-shop, or other buildings for the convenient use of said roads,

shall cover over two square acres each," applies only to the land of the State, and not to that of private individuals.    I contend that if the State was so cautious as to provide that only two square acres of its lands should be taken by railroad companies for their purposes, *a fortiori* should it be presumed that the State intended that the same rule should apply to the lands of private individuals.

II.    The Railroad Act, section thirty-one, deprives the Court or Judge of any discretion as to whether he shall set aside the report and grant a new trial.    It says that he *shall* do so, but that he shall not recommit to Commissioners such matter more than twice. If the Legislature has expressed its intention clearly, that intention must be followed regardless of consequences.    (*O'Neil* v. *New York and Nevada S. M. Co.*, 3 Nev. 153.)

III.    The locality and quantity of the land show that it is not necessary, nor proper, that plaintiff should take so much as it seeks to do in this proceeding.

IV.    The evidence did not justify the report, inasmuch as it shows the land to be worth a much larger sum than the five hundred dollars awarded, and at least seven hundred and fifty dollars.

V.    The question ruled out was proper.    The statute (Sec. 30) provides that " in ascertaining and assessing such compensation, they shall take into consideration, and make allowance for, any benefit or advantages that, in their opinion, will accrue to such person or persons by reason of the construction of the railroad, as proposed by said company."    In this case, plaintiff takes all of defendant's land, and hence, no benefit or advantages can accrue to him by reason of the construction of the railroad.    Whatever facts and circumstances, or reasons, therefore, in the minds of the witnesses give value to the property, must be taken into consideration by them in forming their opinions in reference to its value. (*Jacob* v. *City of Louisville*, 9 Dana, 114 ; Sedgwick on Damages, 566 ; 2 Kent's Com. 399, and note; *Central P. R. R. Co.* v. *Pearson et al.*, 35 Cal. 261.)

VI.    The condemnation and appropriation of private property to public use is the exercise of the right of eminent domain, and

hence, of a right of sovereignty, and therefore should be carried into execution by and through the instrumentality of those officers of government who exercise the sovereign functions or powers of government, and not by and through those who do not possess sovereign functions—as judicial officers, whose duties are simply judicial, to declare the law and order judgment accordingly. The Commissioners, therefore, should have been appointed by the Governor of the State, and not by the District Judge. (*Bloodgood* v. *Mohawk and Hudson R. R. Co.*, 18 Wend. 69; 2 Kent's Com. 391; Sedgwick on Damages, 566.)

VII. The taking of private property for public use proceeds upon the idea of public necessity: as a right of way, etc.; but what necessity can there be for a railroad company to condemn and appropriate the property of a citizen which lies off of the line of its road? It cannot be necessary for such company to have the power for the purposes of machine-shops, depots, work-shops, etc.; for if it cannot purchase land for these purposes at one place on its road, it can at another.

VIII. The statute allowing and providing the way by which private property may be taken for public use is in derogation of common right, justice, and law—and hence, must be strictly pursued and construed. In this case it was not strictly pursued—for the order of the Court directed that the report of the Commissioners should be made within twenty days from their first meeting, whereas it was not made within that time.

*Hillyer, Wood & Deal*, for Respondent.

I. The right of eminent domain gives to the Legislature the control of private property for public uses. (2 Kent's Com. 338.)

II. The use of land for railroad purposes is a "public use" within the term, as used in our Constitution. (*Contra Costa R. R. Co.* v. *Mars*, 23 Cal. 326; *Beekman* v. *Saratoga and Schenectady R. R. Co.*, 3 Paige's Ch. 73.)

III. The Constitution does not prescribe the mode in which the compensation shall be ascertained; that was left for the Legislature

24

to determine, and it determined it. (*Beekman* v. *Saratoga and Schenectady R. R. Co.*, 3 Paige's Ch. 75; *Gibson* v. *Mason*, Oct. Term, 1869.)

IV.   The plain meaning of section thirty-one of the Railroad Act is, that the report should be set aside and a new trial granted, only in cases where good cause is shown. This is the meaning placed upon a similar section by the Supreme Court of California, in 35 Cal. 259. The statute of this State was copied from the statute of California. (Hittell's Gen. Laws of Cal. 856.)

V.   The compensation required to be paid to owners of property appropriated for public use is the actual value of the land. (Sedgwick on Damages, 5th Ed. 666; *C. P. R. R. Co.* v. *Pearson*, 35 Cal. 261.)

VI.   The Commissioners did not err in refusing to allow appellant to ask the question as to the necessities of the railroad. The evidence sought to be elicited would have established a speculative value, and not the market value.

VII.   The statute provides that the Commissioners shall view the land and hear the evidence of witnesses, in order to ascertain the compensation to be paid. Although they are not to be guided solely by the authority of their senses, that should certainly have great weight with them. In this case there is a conflict in the testimony of the witnesses as to the value of the land and improvements claimed by the defendant. His witnesses fix the value at from seven hundred and fifty dollars to one thousand dollars. Respondent's witnesses testify that five hundred dollars would be a big price. It is to be presumed that the value fixed by plaintiff's witnesses corresponded with the opinion the Commissioners formed in viewing the premises. The Court will not disturb the award when there is evidence to sustain it. (*Brady* v. *Brown*, 20 Cal. 520.)

VIII.   The report of the Commissioners was filed within the time provided by statute, but by some oversight the statement recites that the Court appointed the twenty-third instead of the twenty-sixth of July. The objection made by appellant was never

made until he filed his brief. No such objection can be found in the records. The statute providing that the report should be filed within twenty days after the first meeting of the Commissioners is merely directory, and the failure to file within the time does not invalidate the report. (*Keller* v. *Satuck*, 22 Cal. 471.)

By the Court, LEWIS, C. J.:

In accordance with the requirements of section twenty-four of the Statutes of 1865, page 438, the plaintiff filed its petition in the District Court for the County of Storey, setting forth that it was duly incorporated on the second day of March, A.D. 1868; that it still continues to exist, and is now actually engaged in the construction of its railroad between the City of Virginia in said County of Storey, and the City of Carson in the County of Ormsby; that the line of the railroad has been surveyed, and a map thereof made; that the line as surveyed and laid down in the said map has been adopted by the company as the route of the said road; that the line selected passes over certain premises in Virginia City described as lot five, in block two hundred and thirty-one, range " I "; that certain other premises contiguous thereto, and particularly described in the petition, are necessary to the company for the purpose of enabling it to erect its depots, machine- and work-shops, and other buildings. After alleging that the appellant Elliot is the owner of a large portion of the premises described, it prays that it may be permitted to take possession thereof, and that Commissioners may be appointed to assess the value or compensation to be paid to the appellant therefor. Commissioners were regularly appointed, and after hearing evidence offered by both parties, they assessed the value of the property at five hundred dollars, which was tendered to the appellant; but he being dissatisfied with the report, moved to set it aside, which being refused he takes an appeal, claiming a reversal of the proceedings below upon several grounds, which will be considered in the order in which they are discussed by counsel.

I. It is argued that the report is erroneous, because it awards to the plaintiff more land than it has the right to claim under the law for the purposes designated in the petition. Section twenty of

the Act referred to, it is true, limits the amount of State land to
be appropriated for the purposes mentioned to two acres, but there
is nothing in the Act extending such restriction to land belonging to
individuals.    But it is contended that as this limitation is imposed
respecting land belonging to the State, it must be presumed it was
the intention of the Legislature to extend it to the land belonging to
the citizen also.    By a well known and familiar rule of construction,
however, the presumption is the other way.    The mention of one
thing or person, is in law an exclusion of all other things or persons.
Here the Legislature having expressly chosen to declare that no
more than two acres of the State's land shall be taken for the erec-
tion of any one depot, or other buildings, is it not perfectly manifest
from the failure to extend the same provision to other land in express
terms, that it was not the intention it should apply ?    By the rule
quoted no land except that belonging to the State could be included
within the limitation ; and as there is nothing in the law authorizing
a departure from this rule of construction it must be followed, and
the section held to apply only to lands belonging to the State.

II.    It is claimed that section thirty-first of this law makes it the
duty of the District Judge to set aside the report of the Commis-
sioners whenever either party is dissatisfied with it, and a motion is
made to that end.    But this is very clearly a misconstruction of the
law.    The language of the section is : " The said company, or any
of said defendants, if dissatisfied with the report, may within twenty
days after the time for the filing of said report, and after ten days'
notice to the parties interested, move to set aside the report and to
have a new trial as to any tract of land, upon good cause shown
therefor ; and the said Court or Judge shall set aside the report as
to such tract of land, and may recommit the matter to the same or
to other Commissioners, who shall be ordered to proceed in like man-
ner as those first appointed ; but such matter shall not be more than
twice recommitted to Commissioners."    Clearly, this section does
not make it the duty of the Court or Judge to set aside the report
in every case when either party may be dissatisfied with it, regard-
less of the merits of the matter.    The fair construction of the lan-
guage is, that the report may be set aside upon good cause shown,

not as a matter of course upon the application of either party. The words, "the said Court or Judge shall set aside the report," must be taken in connection with what precedes, and thus the action of the Court is to be controlled by the condition upon which it is declared the party shall be entitled to a new trial—that is, "upon good cause shown therefor." Why attach the condition of " good cause shown " to the person's right to a new trial in the first portion of the section, if it be the duty of the Court to grant it without condition or a showing of good cause ? Evidently, it is only when good cause is shown that the Court or Judge is authorized to set aside the report.

III.   It is next contended that the quantity of land claimed by the company is not necessary for the purposes claimed by it.   But whether it be necessary or not must be determined by the evidence, and it is proven to be necessary.   It is claimed by the company for depot and other building purposes, and its officers testify that it is necessary for this purpose.   It cannot be presumed, either from the quantity or location of the premises, that it is not necessary, when the only testimony in the record shows the contrary.   Indeed, the necessities in such cases are to a great extent to be determined by the company itself; at least, if it appear that it is acting in good faith, and there is evidence showing that the land claimed by it is necessary for the purpose of enabling it to erect such buildings as its business may require, the Courts cannot hold, without any evidence tending to overcome such state of facts, that the necessities do not exist.   There is no exact standard in such case whereby the wants of the company may be definitely ascertained.   Its necessities, so far as the quantity of land it may require for building purposes is concerned, depend upon various and varying facts and circumstances.   We do not wish to be understood as intimating that a company may claim land in a locality off the line of its road by showing that it is necessary to it.   The question here is simply whether the quantity of land claimed is necessary for the purposes to which it is to be devoted, and not whether a company may, under the plea of necessity, claim land not contiguous to its road. Whether one acre or five be necessary for building purposes at any

one point, must depend upon facts peculiarly within the knowledge of the officers of the company; and if by their testimony it be shown that a given quantity be necessary, we cannot see how, with no evidence to overcome such proof, a Court can hold it unnecessary. This Court clearly cannot disturb the action of the Judge below on this ground.

IV.    That the Commissioners did not award to the appellant the value fixed upon the premises by the weight of evidence, is the fourth assignment of error.    If it be admitted that the testimony reported in the record preponderates against the conclusion of the Commissioners on this point, it cannot be said, in any view that may be taken of it, that the preponderance is so great and decided as to justify an interference with the report.    There is testimony decided and substantial in support of it; and furthermore, under the statute, the Commissioners are required to examine or view the land themselves, which was done in this case; and thus their opinion of its value is added to the testimony of the witnesses on behalf of the respondent.    Under such circumstances the decision of the Commissioners will not be set aside if there be any substantial testimony to support it.    Such is the rule repeatedly announced, and we think uniformly followed.    (See *Piper's Appeal*, 32 Cal. 530, and cases there cited.)    This case very clearly comes within the rule, and hence the report cannot be disturbed.

V.    The appellant, examining one of his witnesses respecting the value of the premises in question, put this question:    "What is the value of the tract of land claimed by me, taking into consideration the fact that the mine of the Chollar Potosi Company lies west of it, the mine of the Julia Gold and Silver Company to the south, and the mine of the Senator Company to the north; that these mines may be developed and turn out rich; that the Railroad Company has located its road near this tract, and that *it desires it for the purpose of putting up its machine shops and other buildings*, and that its value will be increased by the erection of such buildings?"

This question was objected to, the objection sustained, and appellant complains of the decision as error.    The ruling was correct.

A company possessing this sovereign power of entering upon and taking the land of the citizen *in invitum* should certainly be made to render a complete, just, and liberal compensation to the owner whose property they so appropriate. To secure the unrestrained enjoyment of property is one of the first and most vital objects of government, and theoretically at least in this country the right is secured and protected by the strongest possible guaranties, admitting of no exception save where the public welfare, which in all governments is superior to individual rights, demands it. And when so demanded, the compensation awarded should be liberal without being unjust to the public, and this is accomplished by the payment of the full actual value in money, of the property claimed. (*Sullivan's Heirs* v. *The City of Louisville*, 5 Dana, 28.) In ascertaining that actual value, generally everything which actually enhances its present worth should be taken into consideration; not, however, the fact that it is necessary or indispensable for the purposes for which it is claimed by the public. Those necessities which induce it to be claimed, or the fact that it is desired for public use, should in no wise enter into the consideration of its value. To allow that would be to measure its value by the immediate necessities of the public, rather than its actual worth. The Constitution secures a "just compensation," not a compensation to be regulated by the necessities which may compel its appropriation to the public use. The actual value in money, to be ascertained by its location, the price at which similar land may be or has been sold in its vicinity, or what it would itself sell at, is the measure of damage. The public, or a company to whom the right of eminent domain is extended, is certainly entitled to have the land claimed by it at its fair market price, unaffected by the fact that it may be desired by it. Were it not so, the value of land would always be regulated, not by what it might be actually worth in the market, but by the extent to which it might be necessary for public use, and thus a piece of land otherwise worthless might become invaluable from the fact that its location would make its appropriation absolutely indispensable to the building of a public work. A tract of land for example, may be so situated that it would be impossible to construct a railroad without securing it. In such case can it be claimed that its value is to be

estimated by that fact? We think not. Such would not be a just valuation. The question propounded to the witness, however, assumes that it might be taken into consideration in his estimate of the value of the appellant's land. The Commissioners for this reason properly ruled it out.

VI. The sixth point made by appellant does not appear to us to possess the force assumed for it. The course here pursued of allowing each party to select each a Commissioner and the Court to appoint the third is the usual method pursued in proceedings of this kind; nor does there seem to be any constitutional objection to it. The manner in which private property shall be taken is not pointed out in that instrument, hence it would seem the Legislature has the power to prescribe any method which will produce a just and fair result. There seems to be no more reason why the Commissioners should be appointed by the executive than the other co-ordinate branch of the government—the judicial. The proceedings whereby a citizen is thus deprived of his property, and the just compensation to which he may be entitled is to be ascertained, are essentially judicial in their character, and therefore the appointing of and supervision over the Commissioners is very properly given to the judicial tribunals. We can see nothing unconstitutional in the course directed to be taken by the law regulating these proceedings.

VII. The seventh assignment is based on an apparent discrepancy in a matter of time, and was not suggested in the Court below. It is stated in the report of the Commissioners that the Court directed them to meet on the twenty-sixth of July, and that they did so; and it also appears that the report was filed within twenty days from that time. The agreed statement, however, shows that the Court ordered the first meeting on the twenty-third, in which case the report was not filed within the time specified. But the report of the Commissioners is to govern in this respect, for a statement does not seem to be contemplated in cases of this character, the review being on the report itself. ( *C. P. R. R.* v. *James Pearson*, 35 Cal. 247.) However, without deciding this question, it is

certain that the point is not available in this case, even if the question can be raised in a statement, for the reason that it was not raised in the Court below, when, if it had been suggested, the time of meeting could have been definitely determined.  The report itself showing a strict compliance in this respect with the law and the order of the Court, and as the point is first made in this Court, it must be disregarded.

The order of the lower Court refusing a new trial is affirmed.