# THE VIRGINIA AND TRUCKEE RAILROAD COMPANY, APPELLANT, v. JOHN HENRY et al., RESPONDENTS.

CONDEMNATION OF LAND FOR RAILROADS—"DAMAGES TO RESIDUE OF PREMISES." Although the statute in reference to making compensation for lands condemned for railroad purposes (Stats. 1864-5, 427, Sec. 30) does not, technically speaking, allow for damages to the residue of premises from which a portion only is taken, yet such damages are a proper element of estimate in arriving at the "just compensation" which must be awarded to the owner of the land taken.

CONDEMNATION OF LAND—VERBAL ERRORS IN COMMISSIONERS' REPORT. Where a report of commissioners appointed to appraise land condemned for railroad purposes allowed a round sum for "the value of said ground appropriated and the damage to the remainder of the premises by reason of the severance of the part taken," etc.: *Held*, that though "damages to the remainder" were not a matter of distinct allowance, yet, as they were an element of estimate in arriving at a "just compensation" for the land actually taken, the error of the report, being one of form rather than of substance—of expression rather than of real meaning, would not vitiate it.

"COMPENSATION FOR LAND TAKEN" IS NOT MERE "MARKET VALUE." The statute providing for "compensation" and "damages" to be awarded for lands condemned for railroad purposes (Stats. 1864-5, 427, Sec. 30) does not contemplate the giving of the mere "market value" of the land taken; and if it did it would in that regard be unconstitutional.

MEANING OF "JUST COMPENSATION." The word "just" in the constitutional provision that private property shall not be taken for public use without "just compensation" (Const. Art. I, Sec. 8) is used evidently to intensify the meaning of the word "compensation"—to convey the idea that the equivalent to be rendered shall be real, substantial, full and ample.

STATUTE OF TWO CONSTRUCTIONS. When the language of a statute admits of two constructions, one of which would render it constitutional and valid and the other unconstitutional and void, that construction should be adopted which will save it.

"Value" Sworn before Assessor not Evidence of Value on Condemnation. The valuation which a person puts upon his property before an assessor for taxation purposes, though it may perhaps be admissible by way of contradiction of the owner's testimony to the contrary, has no weight, and is in fact incompetent as independent evidence in determining the value of such property on proceedings for condemning it for railroad purposes.

Compensation for Land Taken—"Special Injury to Business" Irrelevant. Upon an inquiry as to the compensation to be awarded a person whose property is condemned for railroad purposes, testimony as to special injury to such person's business is irrelevant.

Objections to Testimony before Commissioners. Upon a proceeding before commissioners to appraise the compensation to be paid for private lands taken for railroad purposes, if improper or irrelevant testimony be introduced, timely objection thereto should be made or no advantage can be taken of the error.

Report of Commissioners—Omission of Testimony. Though it is good practice for commissioners on proceedings for the condemnation of land for public uses to present with their report all the testimony, as suggested in *Virginia and Truckee R. R. Co.* v. *Lovejoy*, 8 Nev. 100, it is not vital error not to do so, and especially when the omitted testimony appears to have been immaterial.

Mode of Estimation of Compensation for Land Taken. The compensation to be paid the owner of land taken for railroad purposes is most readily and fairly ascertained by determining the value of the whole land without the railway and of the portion remaining after the railway is built—the difference being the true compensation to which the party is entitled.

Powers of Commissioners. Commissioners appointed to appraise the compensation to be paid the owner of property taken for public uses are not on questions of fact confined and limited as a jury: though they hear and weigh the allegations and testimony offered, they themselves view the premises and are supposed to exercise their own judgment to some extent, irrespective of the evidence adduced.

"Good Cause" to Set Aside Commissioners' Report. The "good cause" for which the statute provides a report of commissioners appointed to appraise compensation for land taken for railroad purposes may be set aside, (Stats. 1864–5, 427, Sec. 31) means something clear and indubitable, pointing error in law or fact, intentional or unintentional on the part of the commissioners.

Virginia and Truckee R. R. Co. v. Elliot, 5 Nev. 358, on the point that the decision of commissioners in estimating the compensation to be paid for lands taken for railroad purposes will not be set aside if there be any substantial testimony to support it, affirmed with a view of settlement of question.

Appeal from the District Court of the First Judicial District, Storey County.

This was a proceeding under the statute of March 22, 1865, providing for the incorporation of railroad companies and the management of the affairs thereof, (Stats. 1864–5, 427) to condemn certain land in the town of Gold Hill in

Virginia and Truckee R. R. Co. v. Henry.

Storey County, for the purposes of a side track.   The land taken was the west half of lot 5 in block 2 of range "E" of said town, all of which lot was described in the petition as belonging to or claimed by the defendants John Henry and Mary Henry, his wife.   Commissioners having been appointed by the district judge in accordance with law, they duly met and heard the allegations of the parties and the testimony offered.  'Among other evidence, the defendants testified that they had a boarding and lodging-house and were keeping cows and selling milk on the premises, and that the taking of one half of the lot by the plaintiff was a serious injury to their business;—to the introduction of which evidence before the commissioners no objection appears to have been taken.   The other evidence related principally to the value of the lot before the railroad was built and the value of the remaining portion after the railroad had appropriated the part taken, which was about thirty-six feet by twenty-five.   In their report the majority of the commissioners awarded compensation in the sum of one thousand dollars—the third commissioner being willing to award only five hundred and fifty.

The plaintiff being dissatisfied moved to set aside the report and for a new trial on the various grounds noticed in the opinion.   The motion was denied and the report confirmed.   Plaintiff appealed from the orders refusing to set aside and confirming the report.

*Mesick & Wood,* for Appellant.

I.   There was error in allowing compensation for damages caused by the severance of the land appropriated from the residue of the land owned by defendants.   The statute does not provide for or allow any such damage.   Compensation can be awarded "only for the land sought to be appropriated." The province of the commissioners is simply to determine the compensation for the land appropriated; with the question of damages from severance they have nothing to do; and to give them power to do anything else would be to confer upon them an authority not warranted by the statute.

An examination of the cases cited to sustain the action of the commissioners will show that the statutes of the various states under which those decisions were made conferred much more extended power than does that of Nevada; and we are unable to find any decision giving to commissioners any such authority as is claimed for them in this case unless the authority was found in the statute under which they were appointed. See *Hatch* v. *Vermont Central Railway*, 25 Vermont, —— Redfield's Supplement to Law of Railways, 300.

II. It is admitted that the commissioners failed to report a very considerable portion of the testimony; but it is objected that it was the duty of petitioner to move to amend the report. The answer is simple. The statute (Sec. 31) only authorizes one motion, that is to set aside the report and have a new trial, which was the motion made. It seems plain that the report should have been set aside on account of its imperfect character; for the reason that, as the district court is constituted the tribunal before which the review shall be had, in order that such court may be in a position to fully and fairly consider and determine the matter and have before it all the facts necessary to such consideration, the statute requires the commissioners to file "their report signed by them setting forth their proceedings in the premises." The legislative intent must have been that the report should set forth all the proceedings necessary to a complete understanding of the merits of the case. *Virginia and Truckee R. R. Co.* v. *Lovejoy, ante,* 100; *C. P. R. R. Co.* v. *Pearson,* 35 Cal. 258.

*J. A. Stephens,* for Respondents.

I. The statute requiring the commissioners to file their report setting forth their proceedings in the premises does not imply that they are to report all the testimony taken before them. While it may be the better method to do so, there is nothing compulsory; minutes of the testimony are sufficient. *C. P. R. R. Co.* v. *Pearson,* 35 Cal. 258.

II. If material testimony given before the commissioners

was omitted in their report, the proper method to pursue was to obtain an order of the court requiring them to certify the remainder as an amendment to their report, or otherwise ; and if it could not be obtained it would then be good cause for setting aside the report. *C. P. R. R. Co.* v. *Pearson*, 35 Cal. 259; *Thompson* v. *Parker*, 3 Johns. 260; *Caffely* v. *Keeler*, 12 Wend. 290. But the testimony which appears by the affidavits to have been omitted was irrelevant and immaterial. *C. P. R. R. Co.* v. *Pearson*, 35 Cal. 262; 40 Pa. State, 53.

III. Where a party seeks to set aside an award of commissioners the burden of proof is upon him to clearly satisfy the court of any alleged mistake and that he was prejudiced thereby; and also to show that if the mistake had not occurred the award would have been different. *Tomlinson* v. *Tomlinson*, 3 Iowa, 575; *Knox* v. *Symonds*, 1 Vesey, 369; *Bushnel* v. *Marsh*, 17 How. 344; *McKenney* v. *Western Stage Co.*, 4 Iowa, 420.

IV. The statute, in making it the duty of the commissioners to ascertain what benefits or advantages the owner of the land will derive by reason of the construction of the railroad, means, of course, the benefits or advantages to the remainder of the land left after taking a portion; for if all were taken there would be nothing left by which he could derive a benefit or advantage, and in that case the market value of the land would be the compensation to be paid. This shows that the commissioners are to look beyond the bare abstract value of the strip or portion of land to be taken. The difference between the value of the whole tract before the construction of the road and the value of the portion left after the road has been constructed, is the true compensation to which the party is entitled, as held in California. *San Francisco A.- & S. R. R. Co.* v. *Caldwell*, 31 Cal. 375; Hitt. Gen. Laws of Cal. 855; *Troy and Boston Railroad Co.* v. *Lee*, 13 Barb. 169; 16. Barb. 273; 16 Barb. 68; 47 Pa. 29; 2 Za. 495; 4 English L. and Eq. 265; 37 Pa. St. 469; 43 Pa. St. 495; 29 Ind. 536; 26 Texas, 588; 11

Minn. 515; 2 Q. B. 630; 7 Harris, 192; 8 Barr, 445; 3 Casey, 252; 9 Casey, 56, 426.

We are unable to find any authority upholding the doctrine that the owner is compelled to accept the value of the portion of his land taken only, and resort to an action against the company for damages by reason of the severance to the remainder.

By the Court, WHITMAN, C. J.:

This appeal is from the order of the district court confirming the report of commissioners appointed to ascertain and assess the compensation to be paid respondents for lands to be taken by petitioner for its use; and from the order denying a new trial.

Appellant's main objection is to the allowance by the commissioners of damages to the residue of the premises, from which a portion was taken; and it is strenuously insisted that the proper construction of the statute of this State forbids such allowance. Technically, yes, so far as the ultimatum of the report is concerned; and the one under review is awkwardly expressed when it finds "that the value of said ground appropriated by them and the damages to the remainder of the premises of defendants by reason of the severance of the part taken is," etc.; but as the damage to the residue of a tract of land from which a portion is taken for public use is always an element of estimate in arriving at the compensation for the land taken, there is no substantial error. It is of form rather than of substance, of expression than real meaning. It is no such error in principle as should vitiate the report. So, for all that, it should stand. *Troy and Boston R. R. Co.* v. *Lee*, 13 Barb. 169.

Says the statute: "The said commissioners shall proceed to view the several tracts of land as ordered by said court or judge, and shall hear the allegations and proofs of said parties, and shall ascertain and assess the compensation for the land sought to be appropriated to be paid by said company to the person or persons having or holding any right,

title or interest in or to each of the several tracts of land; and in ascertaining and assessing such compensation they shall take in consideration and make allowance for any benefit or advantages that in their opinion will accrue to such person or persons by reason of the construction of the railroad as proposed by said company; and if the said railroad company shall, in their petition filed in said special proceedings, offer or agree to make good and sufficient fences on the line of their said railroad or any portion thereof, or to make good and sufficient cattle-guards where fences may cross said line of railroad, at such places and such times as the same may be necessary, no sum or price for such fences shall be included in the compensation or damages to be awarded by said commissioners." Stats. 1864–5, pp. 439–40.

Upon this language, although the words "compensation" and "damages" are used, of course in the received and construed sense, petitioner insists that the measure thereof is filled by giving the private person the market value of the land taken. If such was the intention of the legislature, apt language has not been chosen to express it; and if such language had been used as of necessity clearly expressed such intention, then the act in that regard would have been opposed to the constitutional provision of the United States and of this State forbidding the taking of private property for public use without "just compensation," and not only so but to the practice either of written or unwritten law of every civilized people. Upon principle and precedent the proposition is monstrous. While the law does and should provide in proper case for the surrender to the public use of individual property, so that no stay shall impede the general necessity, on the other hand it must jealously guard the rights of individual owners. They are never to be remitted, as counsel suggests, to litigation for all matter of loss save the naked market value of the property taken, but no part of their property shall be taken without just compensation "first made or secured." It is difficult to imagine an unjust compensation; but the word "just" is used evidently to intensify the meaning of the word "compensation;"

to convey the idea that the equivalent to be rendered for property taken shall be real, substantial, full, ample; and no legislature can diminish by one jot the rotund expression of the constitution. So are all the decided cases. While courts have differed upon minor points, two of which the statute of this State settles, namely, the allowance for particular benefit derived from the construction of the railroad and the exclusion from the calculation of damages of the cost of necessary cattle-guards and fences where the petitioner offers to construct; yet upon the great substantial underlying basis, upon which only can arise a constitutional law for the taking private property for public use—the absolute protection of the individual by just compensation—there has been, could be, no dispute. *Bigelow* v. *West Wis. R. R. Co.*, 27 Wis. 478; *Memphis and Charleston R. R. Co.* v. *Payne*, 37 Miss. 700; *Walther* v. *Warner*, 25 Mo. 277; *Meacham* v. *Fitchburg R. R.*, 4 Cush. 291: *Swan* v. *Williams*, 2 Mich. 427; *Aldridge* v. *The Tuscumbia R. R. Co.*, 2 Stewart and Porter, (Ala.) 199; *Johnson* v. *Joliet and Chicago R. R. Co.*, 23 Ill. 203; *O'Hara* v. *Lexington R. R. Co.*, 1 Dana, 232; *Woodfolk* v. *Nashville and Chattanooga R. R. Co.*, 2 Swan, 422; *Wilmington & Reading R. R.* v. *Stauffer*, 60 Pa. State, 374; *Cleveland and Pittsburg R. R. Co.* v. *Ball*, 5 Ohio State, 568; *Troy & Boston R. R. Co.* v. *Lee*, 13 Barb. 169; *Winona R. R. Co.* v. *Waldron*, 11 Minn. 515; *Tide Water Canal Co.* v. *Archer*, 9 Gill & Johnson, 480; and so on, *ad infinitum*. As has been said, there is not, nor could there be, any well considered case to the contrary.

In the case first above quoted occurs the following remarks applicable here: " Several witnesses were also allowed to testify, under like objection, as to how much less the remainder of the quarter section was worth at the time the land was taken by the defendant than the whole quarter section would then have been worth had the same not been taken. The objection to the foregoing testimony is predicated upon the peculiar language of the charter of the defendant, providing for condemning land for its railroad, etc. The charter simply makes provision for an appraisement and award

of *the value of the land taken,* and is entirely silent on the subject of compensating the owner for any damage which may result to him in case such taking of his land depreciates the value of his other lands lying contiguous to that so taken and being part of the same tract. B. and Local Laws of 1863, Ch. 243. It is urged that this language distinguishes this charter from nearly all of the railroad charters which have been granted by the legislature of this state; and that while under such other charters the owner of the land taken may recover compensation for the damages to his whole tract, by reason of the taking of a portion of it, he can only recover in a case arising under the charter of the defendant the mere naked value of the land actually taken, without regard to the effect of such taking upon the balance of his lot or farm.    *    *    *    *
After a careful consideration of the subject, I am impelled to the conclusion that the construction of its charter for which the counsel for the defendant has so earnestly and ably contended, is untenable. He concedes, if I understand him correctly, that had the charter provided for making *compensation* to the owner of the land taken or for assessing his *damages,* under the authorities the rule would have been otherwise. I think it is not difficult to demonstrate that the terms 'assessing the value of the land taken' and 'making compensation to the owner for the land taken,' mean the same thing. Section 13, Article I, of the constitution of this state provides, that 'the property of no person shall be taken for public use without just compensation therefor.' Under this restriction the state may, in the exercise of its right of eminent domain, appropriate to public use the private property of the citizen. In respect to the land taken from the plaintiff, the state has delegated or has attempted to delegate to the defendant this high attribute of its sovereignty. But the defendant takes the power subject to the restriction, or it does not take it at all. Unless the law which purports to confer the power to take the land provides for just compensation to the owner thereof, it is in violation of the constitutional restriction, and therefore void. Hence, unless

the provision of the charter of the defendant for 'assessing the value of the land taken' is equivalent to one giving the owner 'just compensation for the land taken,' the charter in that respect is void, and the company have no power to take land for any purpose, without the consent of the owner thereof. It must be assumed that the legislature intended to confer upon the defendant a valid power; and if so, the conclusion is irresistible, that by the terms 'value of the land taken' it meant just compensation to the owner for the land which it empowered the defendant to take. It requires neither argument nor reference to authorities to show that when the language of a statute admits of two constructions, one of which would render it constitutional and valid and the other unconstitutional and void, that construction should be adopted which will save the statute. An application of this rule to its charter defeats the construction for which the counsel for the defendant contends, and saves to the defendant the powers therein granted. Inasmuch as the defendant has taken private property pursuant thereto, it cannot justly complain if we give to the charter a construction which will save the rights thus asserted under it. We hold therefore that the provision of the defendant's charter by virtue of which the land of the plaintiff was taken, entitles him to just compensation therefor. " pp. 484-5-6-7.

It is next objected that the report does not show the proceedings had, in that it fails to disclose material testimony received. There is conflict upon affidavits filed as to what the omitted testimony in fact was; but, accepting the petitioner's version as entirely correct, it could in no view of the case have been material. Henry, one of the defendants, testified that he swore his property before the assessor at much less than he valued it before the commissioners. As to the estimate for taxation, unfortunately too common a course! but one which could have no weight in determining the value of the property in question, incompetent in fact for that purpose though perhaps admissible to tend to contradict his testimony in chief; if any stress was given that,

there should have been none as the evidence was entirely irrelevant, basing as it does the claim for compensation mainly upon the fact of special injury to respondent's present business. This is not the rule. *Whitman et al v. B ston and Maine R. R.*, 3 Allen, 133. The same is true of Mrs. Henry's testimony; but if, perchance, the commissioners were influenced by the statements of either or both, it is petitioner's own fault; it should have made timely objection, and the record shows none.

The cross-examination of Cooper, Brown, Butler and Robinson did not vary their direct testimony. So while the intimation made in *Virginia and Truckee R. R. Co. v. Lovejoy*, *ante* 100, as to the propriety of presenting all the testimony to the court suggests good practice and might well be followed, it is no vital error not to do so, especially when such is immaterial as in the case at bar. The district court has power to order in the testimony, and in a proper case would undoubtedly do so; here there was no call for an order. The district court saw that there was substantial testimony to sustain the award and that all such said to have been omitted could not touch the issue.

The only evidence in point came from Winterbauer, Cooper, Robinson and Fraser. This was based upon or approximated the basis of the rule, which is clearly summed up by a text writer thus: "It has been said the appraisers are not to go into conjectural and speculative estimations of consequential damages, but confine themselves to estimating the value of the land taken to the owner. This is most readily and fairly ascertained by determining the value of the whole land without the railway and of the portion remaining after the railway is built. The difference is the true compensation to which the party is entitled." Redfield on the Law of Railways, Sec. 71, Sub. 3.

Winterbauer fixes the value of the whole property before the severance at two thousand dollars, after at five or six hundred; Cooper at twenty-five and twelve; Robinson at sixteen and twelve; Fraser at fifteen and eleven; making, as will be seen, the various estimates of compensation fourteen,

thirteen, and four hundred dollars. The commissioners found one thousand. Here was a conflict of testimony, but no such conflict as of itself would warrant a district court in setting aside the verdict of a jury because against the weight of evidence. It must be remembered that these commissioners are not on questions of fact confined and limited as a jury. They hear and weigh the allegations of the parties; they view the premises, and are supposed to exercise their own judgment to some extent, irrespective of evidence; and into their conclusions enter elements of calculation which it is hard to estimate, but which are of sufficient importance to deter a district court, even in absence of statutory prohibition, from lightly setting aside a report so made. Under the statute, it can only be done " upon good cause shown therefor. " What that good cause shall be can with safety be held something clear and indubitable, pointing error in law or fact or both, intentional or unintentional on the part of the commissioners. *Piper's Appeal,* 32 Cal. 530; *St. Louis and St. Joseph R. R. Co.* v. *Richardson,* 45 Mo. 466.

Such is not the case here. As this court said in another case and iterates now, which affirmance it is hoped may be regarded as a settlement of the question: "If it be admitted that the testimony reported in the record preponderates against the conclusion of the commissioners on this point, it cannot be said, in any view that may be taken of it, that the preponderance is so great and decided as to justify an interference with the report. There is testimony decided and substantial in support of it; and furthermore under the statute the commissioners are required to examine or view the land themselves, which was done in this case; and thus their opinion of its value is added to the testimony of the witnesses on behalf of the respondent. Under such circumstances the decision of the commissioners will not be set aside if there be any substantial testimony to support it. Such is the rule repeatedly announced, and we think uniformly followed. * * This case very clearly comes within the rule, and hence the report cannot be disturbed. " *The Virginia and Truckee R. R. Co.* v. *Elliot,* 5 Nev. 358.

The orders of the district court refusing a new trial and confirming the report of its commissioners are affirmed.