In the Matter of the Proceedings, under the Grade Crossing Elimination Act, to Eliminate the D. & H. PONY FARM CROSSING and the D. & H. CRANDALL CROSSING in the Towns of Oneonta and Otego, Otsego County (Case 4753), and WEST ONEONTA ROAD D. & H. CROSSING in the Town of Oneonta (Case 4909).

R. W. GROVES and Others, Appellants; PUBLIC SERVICE COMMISSION and Others, Respondents.

Third Department, May 3, 1929.

*George L. Bockes,* for the appellants R. W. Groves and fifteen others.

*Charles G. Blakeslee* [*Russell B. Burnside* of counsel], for the Public Service Commission.

*Hamilton Ward, Attorney-General* [*Albert J. Danaher, Assistant Attorney-General,* of counsel], for the respondent Department of Public Works.

*Joseph Rosch* [*Alfred D. Kelly* of counsel], for the respondent Delaware and Hudson Company.

*D. J. Kilkenny,* for the respondent Otsego County.

HILL, J.   An order has been made by the Public Service Commission for the elimination of three highway-railroad grade crossings on the line of the Delaware and Hudson Company, the following distances, respectively, southwest of its Oneonta station: The " Pony Farm " crossing, two and ninety-five one-hundredths miles; the " West Oneonta " crossing, three and seven-tenths miles, and the " Crandall " crossing, four and fifty-two one-hundredths miles. The Pony Farm and Crandall crossings are each at an intersection of the railroad with the improved main line highway leading from Albany to Binghamton.   The West Oneonta crossing is upon a little used and unimproved country road.

The order directs the closing of the Pony Farm and Crandall crossings for all purposes except foot traffic, and the construction of an overhead highway crossing on the West Oneonta road.   This will furnish the only approach to the highway cut off by the elimination of the two crossings.   Two culs-de-sac will be made of the abandoned road by this connection.   Fifty to one hundred persons dwell in this area.   The traffic will be diverted to a new highway along the northerly side and parallel with the railroad tracks, commencing east of the Pony Farm crossing and connecting with the old highway west of the Crandall crossing.

From the standpoint of through and rapid motor traffic, the plan as ordered has advantages.   The convenience of those who dwell along the highway between the Pony Farm and Crandall crossings as it now exists will be greatly interfered with, and the value of the property markedly decreased.

Several hearings were held, but no plan had been worked out with sufficient definiteness so that details, specifications or careful estimates of cost were presented.   All agree that the grade crossings should be eliminated.   The local authorities and the residents and owners of property adjacent to the abandoned highway urge that a plan should be considered which will leave the highway at its present location.   This should receive careful consideration, for

the diminution in value of the real estate, the inconvenience resulting from diversion of traffic and the loss of a direct highway in either direction it seems will be *damnum absque injuria.* (*Matter of Grade Crossing Commissioners, Nos. 120 & 125*, 210 App. Div. 328; affd., 240 N. Y. 612.) It is argued by appellants that the West Oneonta road is little used and could be abandoned; that it is feasible to construct overhead crossings at the Pony Farm and Crandall crossings, thus obviating the necessity of constructing one and a half miles of new highway partly through a swamp.

At the last hearing in this matter, devoted entirely to discussion between attorneys, engineers and officials, a representative of the State Department of Public Works said that the studies which had been made were not in shape to present as exhibits, a definite plan had not been settled upon, and estimates as to cost were tentative, but orally estimated that an overhead crossing at the Pony Farm would require a twenty-four-foot roadway and a one hundred and fifty-foot span at a cost of $195,000. That the Crandall crossing would require a twenty-four-foot roadway and a one hundred-foot span at a cost of $130,000, yet to construct a ninety-foot span with an eighteen-foot roadway at the West Oneonta crossing would cost only $35,000. It is hard to reconcile these estimates.

The appellants should have further opportunity to question the plan now adopted and to present alternative proposals. The proceedings at the hearings, as shown by the record, might have justified the belief by appellants that further hearings would be had, at which they could present more detailed plans and estimates concerning the route they desired, and whereat opportunity for further cross-examination would be given. We recognize that this is an engineering problem, but as uncompensable damage of thousands of dollars will be caused under the present plan, it should not be acted upon hastily or without full opportunity being given to make alternative suggestions.

The order which we are reviewing is finally determinative as to the manner in which the eliminations sought are to be made. (Grade Crossing Elimination Act [Laws of 1928, chap. 678], § 2, subd. 5.) No constitutional question as to the taking of private property without due compensation is presented.

Competent proof was not given upon all the facts necessary to be proved to authorize the making of the determination. (Civ. Prac. Act, § 1304, subd. 4.) The appeal being the same as from a Supreme Court order a new hearing may be granted. (Grade Crossing Elimination Act, § 10; since amd. by Laws of 1929, chap.

645; Civ. Prac. Act, § 584.) In the exercise of our discretion, we believe the order of the Public Service Commission should be reversed and a rehearing granted (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall*, 219 N. Y. 84, 90) whereat all parties may have full opportunity to present such evidence as they may be advised.

The order of the Public Service Commission should be reversed and a rehearing granted, with costs.

VAN KIRK, P. J., HINMAN, WHITMYER and HASBROUCK, JJ., concur.

Order annulled [reversed] and matter remitted [rehearing granted], with costs to the appellants against the Public Service Commission.