In the Matter of the Elimination under Chapter 233, Laws of 1926, of the Highway Grade Crossings of Railroad Operated by the NEW YORK CENTRAL RAILROAD COMPANY, Known as Eddy (State Highway No. 5116) and Sullivan Crossings, Located Respectively about Four and Fifty-six One-hundredths and Four and Sixteen One-hundredths Miles Southwest of Canton Station in the Town of Canton, County of St. Lawrence. (Case No. 4007.)

COUNTY OF ST. LAWRENCE, Appellant; NEW YORK CENTRAL RAILROAD COMPANY and Others, Respondents.

Third Department, May 23, 1930.

*George H. Bowers, County Attorney,* for the appellant.

*Purcell, Cullen & Reynolds [Francis E. Cullen* of counsel], for the respondent New York Central Railroad Company.

*Hamilton Ward, Attorney-General,* for the Superintendent of Public Works.

*Charles G. Blakeslee [Sherman C. Ward* of counsel], for the respondent Public Service Commission.

*Horace C. Hale,* for the respondent International Paper Company.

HASBROUCK, J. The State highway between Gouverneur and Canton in the town of Canton, St. Lawrence county, runs in a direction northeast by southwest. The New York Central railroad runs in an approximately similar direction but more northerly east. The railroad crosses that highway known as the Eddy road at Pyrites and some half a mile further north the Sullivan highway crosses the railroad.

On the southerly side of the Eddy road and north of the Eddy crossing is situated the DeGrasse Paper Company's plant and it is connected with the railroad by a spur track which crosses the Eddy road northerly of the main railroad crossing; on the northerly side of the Eddy road and north of the Eddy crossing is the plant of the Dairymen's League which is connected with the railroad by a spur starting south of the Eddy crossing.

The State Highway Department has had since 1925 elimination of these crossings under consideration and several independent engineering studies have been made resulting in overhead and underpass projects at Pyrites, the elimination of the Sullivan crossing and building a stretch of new road on the northerly side of the railroad to cross the railroad at the proposed new Eddy crossing.

Proceedings were instituted for such elimination in April, 1927.

The alignment of interests showed the New York Central Railroad Company, the DeGrasse Paper Company and the Dairymen's League supporting the overhead crossing; the State Highway Department, later Public Works Department, the county of St. Lawrence and the town and village of Canton for an underpass crossing.

In November, 1927, the Public Service Commission ordered an underpass crossing. After the lapse of five months, and on its own motion, the Public Service Commission opened the proceeding and directed a further hearing. Such hearings were concluded on September 12, 1928, and an amendatory order was made providing for an overhead crossing. Later, and on March 14, 1929, the

county of St. Lawrence petitioned for a rehearing on the amendatory order. Hearings were had on April eleventh and on May thirty-first. The Commission affirmed the order for an overhead crossing. The appeal herein is from that order.

With the determination of November, 1927, all of the parties, so far as the record shows, were satisfied. However, as before pointed out, a rehearing was ordered.

The reason assigned is that by chapter 678 of the Laws of 1928, known as the Grade Crossing Elimination Act, effective March 27, 1928, the cost of the elimination to be borne was fixed at ten (now one) per cent for the county, forty (now forty-nine) per cent for the State and fifty per cent for the railroad company. (See § 3; since amd. by Laws of 1929, chap. 461; Const. art. 7, § 14, as amd. in 1927.) The prior ratio as fixed by the Constitution (Art. 7, § 14, as added in 1925; Concurrent Resolution, March 27, 1925) and the former Grade Crossing Elimination Act (Laws of 1926, chap. 233, § 3) was twenty-five per cent for the municipality, twenty-five per cent for the State and fifty per cent for the railroad company.

It is apparent that there was no difference in the amount required to be paid by the railroad company under whatever spur the Public Service Commission moved.

The principal objection, as stated by counsel for the railroad company in his brief before this court, to the subway or underpass plan, was that it could not be properly drained.

The proposition that the proposed underpass, if it were feasible to construct, was much less dangerous than the overhead crossing cannot be gainsaid.

The question of the feasibility of draining an underpass located 240 feet south of Eddy's existing crossing was gone into by the Public Service Commission thoroughly before making the order of November, 1927.

When the hearing was reopened, after the order of November, 1927, the railroad company called as a witness Walter M. Bittner, its designer and detailer of grade crossing structures.

The point of attack on the order of the Commission was based entirely upon the proposition that an underpass crossing could not be drained. The plans of the Public Works Department provided for the raising of the railroad tracks four feet above the surface of the road. Bittner's testimony was to the effect that Cooke stream, into which it was proposed to drain the subway some 1,400 feet distant from it, showed in December, 1927, the height of the flow in that stream to be one and three-tenths feet below the crown of the roadway of the proposed subway at its lowest elevation.

Such calculation was based by the engineer on what is called "drift." There is no dispute but that the water in the Cooke stream when Bittner was there in December was higher than it had been in twelve years prior to that time.

The stream is a flashy stream and the run off is precipitate — an over-night process. Calculating on "drift" as a base is not impressive from the standpoint of exactitude. Obstructions in the stream, a narrowing channel or the character of debris carried by the tide would affect the mark of the "drift."

Furthermore, it is a matter of general observation that all roads in certain places from one cause or another have times of impassability. The prospect of impassability in the proposed underpass is quite negligible, for it has been demonstrated by surveys based upon exactitudes that it is practical to drain it.

From the mouth of the proposed drain to its exit in Cooke stream there is a fall of sixty-six one-hundredths of a foot in each hundred feet.

These considerations lead to the conclusion that there is nothing to fear from an underpass which may be only affected by high water on an average of once in twelve years.

As to the question of cost. The estimate of the Public Works Department is that the underpass will cost $136,000, plus $7,000 for the road to eliminate the Sullivan crossing; the estimate of Engineer Chase, as stated in the brief of the Attorney-General, is $155,000, exclusive of the cost of the elimination of the Sullivan crossing. His estimate for the overhead crossing is $138,200 for the elimination and $32,500 for the elimination of the Sullivan crossing, exclusive of land and property damage.

These figures do not indicate that as between the proposed types of construction cost constitutes a consideration of particular moment.

The testimony reveals indubitably that the establishment of an underpass crossing will be fraught with less danger than an overhead crossing.

This becomes apparent when we consider that the traveling public using the overhead crossing will be required to negotiate a five per cent grade along high embankments at each side on three curves, on one or more of which visibility is limited to 400 feet, where snow and ice collect through long severe winters and where the pavement by ice and melting snows or rain becomes slippery.

Considering further that the Commission had already determined an underpass and that no persuasive additional evidence was given on the last rehearing against the feasibility of the underpass; that the Public Works Department of the State, the county, the town

and village authorities favor an underpass, it would appear that reason requires the elimination of the Eddy crossing in such manner.

We are aware that we are not to substitute our judgment as to what is reasonable for what the Commission determines reasonable. (*People ex rel. New York & Queens Gas Co. v. McCall*, 219 N. Y. 84; affd., 245 U. S. 345.) But we have, nevertheless, a duty to perform, that of examining into the degree of unreason, if any, of the determination of the Commission. If the determination be so unreasonable as to appear arbitrary or capricious then it is our duty to set aside such determination.

It does not seem to me that the convenience of the railroad in rearranging its sidings made necessary by an underpass construction for the accommodation of the DeGrasse Paper Company or the Dairymen's League, should constitute a reason for rejecting the underpass. (*Danner v. N. Y. & Harlem R. R. Co.*, 213 N. Y. 117, 123; *Matter of N. Y. C. & H. R. R. R. Co.*, 200 id. 121.)

To obviate human suffering, to preserve human life is the great purpose of the elimination of railroad crossings in the State. The ends in view cannot be accomplished by the erection of a crossing carrying more dangers than necessary to the public. The transfer of dangers from a grade crossing to one overhead cannot suffice.

It appears to me that the order of the Commission contemplates rather the convenience of the railroad than the safety of the public. In such aspect it is capricious rather than reasonable. The order should be reversed and the matter remitted.

WHITMYER and HILL, JJ., concur; DAVIS, J., concurs, with a separate opinion, in which WHITMYER, HILL and HASBROUCK, JJ., concur; HINMAN, Acting P. J., dissents and votes to affirm, with an opinion.

DAVIS, J. (concurring). The State Department of Highways recommended that the elimination of the crossing be by an underpass. Officials and citizens of the locality interested approved this plan. The Public Service Commission adopted it. Then ostensibly on its own motion but actually at the behest of the railroad company, it rescinded this order and after another hearing ordered an overhead crossing. This conduct might be deemed capricious.

The new plan, as is quite fully stated by my brother HASBROUCK, involves a change in the course of the highway so that it will cross over the railroad on a bridge at a right angle to the plane of the track. The course that vehicles must follow is on grades and curves in making this crossing. On such crossings where the approaches and the bridges are not lighted, as will be the case here, such curves and grades are high factors of danger. In the winter

in the climate prevailing in St. Lawrence county, snow and sleet storms add greatly to the danger by furnishing a slippery track upon which automobiles must negotiate these curves and grades. It is common knowledge that many accidents occur on overhead crossings thus constructed, particularly under such climatic conditions. The opinion of those residing in the vicinity, based on their judgment and experience, was that the proposed crossing would be more hazardous to public safety than the one now existing. As already stated, they favored an underpass. The opinions of such people are entitled to great consideration. I do not find evidence of weight being given by the Commission to the wishes or judgment of the people of the locality. The elements of danger inherent in grades and curves of an artificial structure of this kind should be entitled to greater weight than either the general items of expense in constructing a crossing or the particular expense charged against the railroad company, or even its convenience. Public safety should be the first consideration of the Commission. That is the basis of the law governing the elimination of highway crossings.

The test of conduct said to be arbitrary is whether or not it may be justified by reasonable statement indicating the grounds upon which it is based. I find no satisfactory explanation of the abandonment of a plan once adopted, and approved by the Department of Highways and by people residing in the locality who will have occasion to use the crossing daily. The chief concern of the railroad company is to escape or minimize expense. The testimony that there can be no sufficient drainage of an underpass is the plausible theory of the interested engineer of the railroad company and nothing more.

In the main I agree in principle with my brother HINMAN that we should not attempt to review the acts of the Commission on frequent appeals by dissatisfied persons, where there is presented a choice between two reasonable plans. But in this case where the Commission once approved the underpass plan and furnishes no good reason for its change of view, I think we may properly exercise our discretion, as we have heretofore done, by sending the matter back for further consideration. (See *Matter of Railroad Crossings*, 226 App. Div. 255.)

I concur for reversal.

WHITMYER, HILL and HASBROUCK, JJ., concur.

HINMAN, Acting P. J. (dissenting). I think the order of the Public Service Commission should be affirmed. It was clearly within the power of the Commission to make the order. The

Grade Crossing Elimination Act leaves the determination of the " manner in which such elimination shall be made, including a determination as to * * * the method of crossing," to the Commission. (Laws of 1926, chap. 233, § 2, as amd. by Laws of 1927, chap. 445; Laws of 1928, chap. 678, § 2, subd. 5.) We may not substitute our judgment for that of the Commission. We may annul the determination if there has been some mistake of law or lack of evidence, or if the conduct of the proceeding or the determination is so unreasonable as to be capricious or arbitrary and amount to an abuse of the authority reposed in the Commission. (*Matter of Grade Crossing Elimination*, 226 App. Div. 447; *Matter of Railroad Crossings*, Id. 255; *Missouri Pacific Railway* v. *Omaha*, 235 U. S. 121.) In this case all parties in interest have had a full opportunity to be heard. There have been many hearings spread over a period of two years. All facts necessary to the making of the determination have been proven. In these respects the case differs from *Matter of Railroad Crossings* (*supra*). The curves and grades adopted conform to the best and most modern practices. The overhead type of crossing is in general use all over the State and we cannot reverse just because we think it more reasonable to have an underpass in compliance with the contentions of the Department of Public Works, the county and the town of Canton. The Commission has been furnished with a staff of experienced engineers who have been provided by law to assist the Commission in determining just such questions as this, relating to the manner of elimination, the methods of crossing and the relative merits and safety of each, as applied to the facts of each case. If preference should be given to the underpass wherever possible because safer than the overhead crossing that is a subject to be dealt with by the Legislature. The statute now leaves it to the Commission. It is not a judicial question. And as a policy to be applied generally or to the facts of this case, the contrary is well supported by the report of the chief engineer of the Commission. Moreover, the question of expense is of some importance. The underpass is a much more expensive scheme in the case of this elimination. Can the statewide plans be completed within the funds available? Shall some parts of the State be wholly neglected in order that this and some other localities may be satisfied as to costly refinements not reasonably necessary in the judgment of the Commission?

The record in the case fails to reveal any abuse of the authority reposed in the Commission. We are simply asked to reverse the determination of the Commission as to which method of crossing is more reasonable. If we can reverse on such ground, not amount-

ing to an abuse of discretion, the whole process of grade crossing elimination will be slowed down tremendously by numerous appeals to the courts not reasonably contemplated by the Legislature. I vote to affirm.

Order reversed on the law and matter remitted to the Public Service Commission for further hearing and determination.