In the Matter of the Application of the BOARD OF SUPERVISORS OF THE COUNTY OF CHENANGO, NEW YORK, Applying on Behalf of and in the Name of the Said County of Chenango, New York, for the Appointment of Three Commissioners of Appraisal to Ascertain and Determine the Compensation to be Paid to the Owners of Land and to All Persons Interested Therein Necessary to Be Acquired for the Bainbridge-Unadilla Part 1, State Highway No. 5013, County of Chenango and Robbins Crossing State Highway No. 5454, and P. S. C. No. 2139.

County Court, Chenango County, July 7, 1938.

*Frank W. Barnes,* counsel for Board of Supervisors.

*Lewis G. Carpenter,* for Irvin J. Bush, Elsie Bush, J. B. DeNio and Cora DeNio.

*Homer D. Owens,* for Edward B. Lawrence and Mabel A. Lawrence.

BROWN, J. In this proceeding, commissioners of appraisal, appointed by this court under section 33 of the Highway Law to ascertain and determine the compensation to be paid to the owners of land taken for the purpose of and in connection with the relocation and reconstruction of portions of the highway on Route 7, referred to in the petition as the Bainbridge-Unadilla Part 1, State Highway, have made and filed their report and the same is now before the court for confirmation.

Parcels of land owned by and comprising part of a farm of Irvin J. Bush, Elsie Bush and others, and hereinafter referred to as the Bush property, and other parcels comprising part of a farm owned

by Edward B. Lawrence and Mabel A. Lawrence, and hereinafter referred to as the Lawrence property, are involved in the proceeding. The highway as formerly located passes through each farm. The portion of the highway passing through the Bush farm has been raised by a fill on the original roadbed and reconstructed. The portion passing through the Lawrence farm has been relocated and reconstructed and, as reconstructed, passes through that farm. The commissioners have found and assessed damages in favor of the owners of the Bush property in the sum of $360, representing the difference in the value of the property before the beginning of construction of the road and the changes therein made and after the completion of such construction work. The damages are made up of certain items set forth in the report, including, among others, the value of two parcels of land, one designated as No. 2A, containing twenty-two one-hundredths of an acre of land, and the other designated as No. 2B, containing thirty one-hundredths of an acre, the value of the two pieces being appraised at $125, and expenses for grading, reseeding and rebuilding a cement walk leading from the porch steps of the residence to the highway made necessary by a fill opposite the owners' home, raising the new highway above the level of the former. The amount allowed for such damage is $100, and the objection to this item is the only one seriously raised by the county to the award as made. The commissioners in their report find and state that: "The facts in this case are that two separate strips of land were acquired from the Bush farm, one directly west from the front lawn of the residence, and another piece east of the farm buildings. In utilizing these two parcels for highway purposes, and their acquisition undoubtedly being for the sole purpose of straightening the road in front of the residence and buildings on this farm, the new surfaced highway was constructed by first making fills both east and west of the Bush residence, which fills and regrading resulted in the elevation of the new highway at the westerly end of the lawn in front of the residence a height of three feet, and from that down to approximately zero on the east side of such lawn, but directly in front of such residence at a point where the cement walk leading from the porch steps straight to the point of intersection with said highway, the new highway has been raised a height of from fourteen to eighteen inches, necessitating the building of from two to three steps in order for pedestrians to get from such cement walk to the new surfaced part of the new highway, and also thus placing the base of the house below the level of the highway and requiring considerable grading to bring the present lawn in front of the residence at grade with the highway,

reconstructing the walk and reseeding such lawn. We find the expense for such grading, reseeding and rebuilding of walk to be $100."

The contention of the county is that the amount allowed for the last-mentioned items is an allowance of damages for a change of grade in the highway and that the owners are not entitled to compensation for damages caused by a change of grade in the highway.

Under the common law the owner was not entitled to damages occasioned to his land abutting on the highway or street by reason of a change of grade by the act of the State or a municipality. The law is well settled now that neither the State nor a municipality is liable to the owner for damages to land occasioned by the mere change of grade of a highway or street unless authorized by statutory provision. (*Fries* v. *New York & Harlem R. R. Co.*, 169 N. Y. 270; *Matter of Torge* v. *Village of Salamanca*, 176 id. 324; *Smith* v. *Boston & Albany R. R. Co.*, 181 id. 132; *Matter of Lawrence* v. *Village of Mamaroneck*, 263 id. 455.) Recognition of the injustice to a property owner who had been damaged by a change in the grade of a street or highway on which his land abutted is found in the legislative enactment applying to the city of New York in the change of grade in the streets in that city (Laws of 1882, chap. 410, § 873; Greater N. Y. Charter, § 951) and in the Village Law, giving owners of land adjacent to streets the right to compensation for damages where the municipality causes a change in the street grade (Laws of 1883, chap. 113; Village Law, § 159, subd. 2.) Owners of land adjacent to a town highway repaired, graded or macadamized may recover from the town damages resulting from any change of grade. (Highway Law, § 197.) The references mentioned apply to cases where no land has been acquired by the municipality for the purposes of the improvement resulting in a change of grade. No statutory provision for the recovery of damages by a property owner resulting from mere change of grade of a highway lying outside of a city or village, exclusive of a town highway, has apparently been made. However, those cases holding that the mere change of grade of a highway where no property has been acquired does not constitute taking property (*Sauer* v. *City of New York*, 180 N. Y. 27; *Matter of Railroad Crossings*, 226 App. Div. 255; *Miller* v. *State of New York*, 229 id. 423; *Buffalo Valley Realty Co.* v. *State*, 248 id. 674) are distinguishable from the instant case for the reason that the Bush lands were appropriated to be utilized in and for the purpose of straightening the highway and the damages follow as the direct consequence of the appropriation and the use to which the land has been put. In *Van Aken* v. *State* (261 N. Y., at p. 362) the court said: " Such consequential damages

as may be awarded are those resulting from a direct taking." The cases mentioned above recognize the distinction. In *Matter of Railroad Crossings (supra)* Mr. Justice HILL, writing for the court, at page 257 refers to the fact that " no constitutional question as to the taking of private property without due compensation is presented." In *Miller* v. *State (supra*, at p. 425) we find the following statement: " The land abuts on the old road as it did before and *no land was taken.*" (Italics mine.) In *Buffalo Valley Realty Co.* v. *State (supra)*, in giving recognition to the distinction mentioned, the court said: " There having been no appropriation of the land in question * * * no consequential damage can be awarded."

We are not dealing here with a situation where a mere change of grade has been made on the site of the former highway without the taking of land. If such were the case the owners of the Bush property would not have been necessary parties to this proceeding. Their lands have been appropriated without their consent for the purpose of highway reconstruction. The law provides a method for ascertaining and assessing damages in such cases (Highway Law, § 34), and a person whose land is taken for public use by a municipality or the State is entitled to fair and full compensation for the damages sustained, both direct and consequential. In *South Buffalo Railway Co.* v. *Kirkover* (176 N. Y. 301, at p. 306) the court said: " The exercise of the right of eminent domain is allowed upon the theory that while the taking of property may greatly inconvenience the individual owners affected, it is in the interest and to promote the welfare of the general public. This being so, there is no reason why the citizen whose land is taken *in invitum*, should suffer any financial loss that may be prevented by awarding him proximate and consequential damages."

The report of the commissioners in relation to the Bush property and the damages awarded the owners thereof is confirmed.

The owners of the Lawrence property have filed objections to the report of the commissioners. Before the acquisition of the lands, Route 7 passed along the northerly side of the claimants' farm and in front of the residence, and between same and the farm buildings, and, a short distance westerly of the residence, curved in a southwesterly direction across an overhead crossing above the tracks on lands of the Delaware & Hudson Railroad Corporation and thence continued westerly to the westerly line of the farm. Since appropriation of the land, the section of the highway passing between the residence and buildings has been rerouted so that the new or relocated portion leaves Route 7 near the western boundary of the farm and cuts nearly through the

center thereof, and, after crossing the lands of the railroad corporation at a new point by an overhead crossing, intersects Route 7 on or near the northeastern boundary of the Lawrence property, thereby eliminating the section of the old road which passed the buildings from the northeasterly boundary of the farm to the westerly boundary thereof. The commissioners find that the acreage of land " acquired for the bounds of the new highway " is 5.315 acres, the new right-of-way varying in width from 197.04 feet on the westerly boundary to 110 feet at a point between the right-of-way of said railroad corporation and the Lawrence lands. In addition to the acreage appropriated, an easement has been acquired for a drainage ditch which has an area of .912 acres. Another parcel of land with an area of .307 acres, of which about a quarter of an acre has been rendered useless for agricultural purposes, was taken, making the total acreage acquired and rendered useless from the Lawrence farm 5.565. A total award in the sum of $1,763, with interest to the date of the report amounting to $126.94, has been made. Of the amount of this award, $1,113 represents the value of the land taken as fixed by the commissioners, and the remainder is made up of certain items specified in the report concerning which there is but little, if any, dispute.

By reason of the rerouting of the highway over the lands or a portion of the lands acquired for such purposes, the buildings and residence on the farm were left a distance of approximately 1,990 feet from the new highway at the head end of the former highway which will be used in the future only by the owners of the farm, the relocation of the highway on the land taken thus isolating the residence and buildings of claimants from the new highway, making it necessary that the owners travel over a quarter of a mile further to reach such new highway and placing the buildings and residence off the mail route, milk route and bus line for said distance. Concerning this feature of the case the report reads: " That this isolation of the buildings and residence of the owners from the new highway, necessitating such owners to travel approximately 1,990 feet farther to reach such new highway and leaving such buildings and residence off from the mail route, milk route and bus line for such distance, will undoubtedly greatly diminish the desirability and value of the farm as a place of residence, and we find its market value will thus be cut forty per cent on account thereof, inclusive of damages above awarded. No satisfactory evidence was offered on the hearing as to whether or not this former strip of Route 7 had been or would be abandoned by the town or county as a public highway or as to whether the owners of the Lawrence farm, or the public authorities, would keep such strip of highway in repair and

open for traffic during the winter season, but the evidence is conclusive that a few rods west of the Lawrence buildings a large barricade has been erected across the macadam surface and that the former highway west and southwest of such buildings has been closed to the public, although a gate has now been constructed in such barricade to permit the owners of the Lawrence farm to have access to about one acre of meadow land which lies west of such barricade, but other than to permit the owners of such farm access to such piece of land, such owners are excluded from the use of such former highway west of such barricade. This, of course, requires such owners to drive easterly the 1,990 feet to the junction of the old highway with the new route, making approximately one and one-half miles farther for such owners to travel in going to Bainbridge from such buildings than was formerly required. The evidence shows that Bainbridge, which lies west of said Lawrence buildings, is the usual marketing place for products produced on this farm, and as a trading center and the place of attendance for children from such farm who might attend school."

The commissioners have found and so report that the market value of the owners' property after the appropriation of a part thereof is forty per cent less than it was before the part was taken for highway purposes, and also report: "We do find that the fair market value of the entire farm before the appropriation was made was $6,000."

No award has been made for consequential damages to the land not taken resulting from the use to which the land taken has been put, although conceding diminution in value to the remainder of the farm for the reasons set forth in the report. The finding by the commissioners that the market value of the farm is forty per cent less than before the appropriation of the land taken for highway purposes and giving the value of the farm before such appropriation, but making no award for consequential damages, reasonably gives rise to the inference that they were in doubt as to the propriety of awarding claimants consequential damages by reason of the use to which the land taken has been put. The claimants are not seeking damages here because of the mere relocation of the portion of the highway which isolates the buildings from the new section of the road. Had no land been taken from their farm and the new portion of the road been located on the land of some other owner, it is quite probable that the claimants would not have been entitled to damages for the inconvenience and injuries occasioned by the relocation. An entirely different situation is present here. A portion of claimants' land has not only been taken but its very use has provided a

location for the new section of the highway and they are seeking compensation for the damages to the remaining land resulting from the use to which the portion taken is to be put.

Where land is taken from the owner against his will for public use, he is entitled to have the various items of damage considered that may affect the fair market value of the property, including such elements as might influence a reasonably prudent person interested in purchasing such property. (*South Buffalo Railway Co.* v. *Kirkover, supra.*) In *Matter of City of New York* (198 N. Y. 84, at p. 88) the court said: " By analogy it would seem that when the state compels a man to give up his land for public use, and permits him to recover, not what he thinks it is worth, but only its fair market value, he should at least have the right to prove every element that can fairly enter into the question of market value." In *Matter of City of Rochester* (234 App. Div. 583, at p. 586) it is said: " One whose land is taken by eminent domain is entitled to receive its greatest value for any available use to which it may be put. As bearing on such value, it is competent to show any fact which the owner would naturally and properly bring to the attention of a buyer with whom he was negotiating a sale. * * * If a portion only is taken, the owner is entitled to be compensated for the difference between the fair market value of the entire property and that of the remainder, after the needed portion has been pre-empted. * * * In determining the value of the portion not taken, all damages resulting thereto by reason of the use to which the part appropriated is to be put must be taken into consideration." In *Troy & Boston R. R. Co.* v. *Lee* (13 Barb. 169), the court said: " The true rule, the only rule which will do equal justice to all parties is to determine what will be the effect of the proposed change upon the market value of the property. The proper inquiry is, what is it now fairly worth in the market and what will it be worth after the improvement is made? " This statement was approved in *Henderson* v. *New York Central R. R. Co.* (78 N. Y. 423, at p. 433). In *Bohm* v. *Metropolitan Elevated R. Co.* (129 N. Y. 576, at p. 585) Judge Peckham writing says: " Generally in taking land the rule may be said to be to pay the full value of the land taken at its market price, and no deductions can be made from that value for any purpose whatever. Then as to the land remaining, the question has been to some extent mooted, whether the company should pay for the injury caused to such land by the mere taking of the other property, or whether, in case the proposed use of the property taken would depreciate the value of that which was not taken, such proposed use could be regarded and the depreciation arising therefrom be awarded as part of the consequential

damages suffered from the taking. I think the latter is the true rule." (*Matter of Leroy Street*, 188 App. Div. 58, 60; *Matter of Jaquino Realty Corp.* v. *Ormond*, 217 id. 76, 82; *Board of Supervisors* v. *Brook Corp.*, 245 id. 892; *Sparkill Realty Corp.* v. *State*, 254 id. 78, 82; *Matter of B. of W. S. of N. Y.*, 277 N. Y. at 456; *Matter of Condemnation of Lands in Village of Pt. Byron*, 136 Misc. 148, 150; *Matter of Board of Supervisors*, 140 id. 894.) In *County of Erie* v. *Fridenberg* (221 N. Y. 389), where in condemnation proceedings the county of Erie had acquired land for highway purposes, the court at pages 392, 393 said: " Fridenberg's property was taken for a right of way, a public purpose — and without his consent. Such taking can only be sustained on giving the owner ' just compensation.' Just compensation is reasonable and adequate compensation and the equivalent for the actual loss that the owner sustains by reason of the public taking his private property. * * * Where land is acquired for public use without the consent of the owner he is entitled to recover the market value of the premises actually taken and also any damages resulting to the residue including those which will be sustained by reason of the use to which the portion taken is to be put by those acquiring it."

In the instant case, a part only of the owners' land has been taken. The proper measure of damages is the difference between the fair market value of the farm before any appropriation of land had been made and that of the remainder. (*Adirondack Power & Light Corp.* v. *Evans*, 226 App. Div. 490, 495; *Matter of City of Rochester, supra; Henderson* v. *New York Central R. R. Co., supra; South Buffalo R. Co.* v. *Kirkover, supra.*)

I have examined *Matter of Simmons* (130 App. Div. 350); *Matter of Public Service Commission* (92 Misc. 420); *Matter of Daly* (72 App. Div. 394); *Matter of East River Gas Co.* (119 id. 350), cited by counsel for the board of supervisors, and find nothing in those decisions in conflict with the well-established principles enunciated in the cases referred to herein. In my opinion, the case of *Matter of Board of Supervisors* (215 App. Div. 147) is distinguishable from the instant case.

This court has no power to increase or diminish the amount of the award. Its powers are confined to confirming the report or setting it aside. (*Matter of Board of Supervisors*, 150 Misc. 461; affd., 242 App. Div. 720; *Matter of Luzerne-Lake George County Highway*, 145 Misc. 736; *Matter of New York Municipal R. Corp.*, 181 App. Div. 896; *Hawley* v. *Village of Elmira Heights*, 163 Misc. 787.)

The commissioners having found that the market value of the Lawrence property has been diminished forty per cent, including

the items specified, by reason of the taking of a portion thereof and the use to which such portion has been put, and not having made any award in full for such diminution in value, the report should be sent back to the commissioners. Therefore an order is directed that the report be sent back to said commissioners, who shall convene for the purpose of further considering any consequential damages sustained by the claimants other than those for which an award is made, and said commissioners are directed to make and file a new report specifying any further award they may make for any such consequential damages to the end that the award may cover all damages they find the owners have sustained.