THE STATE OF NEVADA, on Relation of its
DEPARTMENT OF HIGHWAYS, Appellant, *v.*
GEORGE SHADDOCK and SARAH SHADDOCK,
Husband and Wife, Respondents.

No. 4182

September 22, 1959                    344 P.2d 191

*William E. Freedman,* Deputy Attorney General, of
Carson City, for Appellant.

*Woodburn, Forman, Wedge, Blakey and Thompson,* of
Reno, for Respondents.

## OPINION

By the Court, McNAMEE, C. J.:

This is an action to condemn for highway purposes two parcels of land located at the intersection of Kietzke Lane and East Second Street near the City of Reno. Condemnation was ordered as prayed for and the jury assessed damages to the defendants for the taking of Parcel No. 1 at $68,000, and for the taking of Parcel No. 2 at $468. No damages were allowed to defendants for the severance of Parcel No. 2. The plaintiff, appellant herein, has taken this appeal from that part of the judgment assessing damages. Seven assignments of error are relied upon for reversal.

1. Appellant contends that the court erred in permitting respondents to inquire of prospective jurors on voir dire whether or not the fact that the federal government would pay 80 to 85 percent of the cost of acquiring the

property condemned would influence them; that such an inquiry bore no relation to their qualifications to serve as jurors; and that the question implies as being true something that possibly might not be true.

Prior to this inquiry, counsel for appellant in his examination of one prospective juror had asked: "Do you feel because the state is considered wealthy that they should pay more than is reasonable for land that they need for highways?" This question certainly implies that the state would be responsible for the entire payment, and yet counsel for appellant concedes that federal participation in the payment is possible. If respondents' question referred to facts that possibly were not true, likewise did appellant's. On the other hand either question could have referred to a true statement of facts. Whether respondents' question bore any relation to the particular juror's qualifications is immaterial under the circumstances here presented, because in the absence of any showing of a clear and palpable mistake in the verdict resulting from passion or prejudice it was within the court's discretion to permit respondents to refer to those matters alluded to by the appellant theretofore.

Appellant has cited the case of St. Clair Housing Authority v. Quirin, 379 Ill. 52, 39 N.E.2d 363, wherein counsel for respondent in a condemnation proceeding were permitted to question the jurors on their voir dire examination as to whether or not the fact that the United States Government was interested in the project and as to whether or not the fact that it would not cost the taxpayers of East St. Louis anything, would influence them in their verdict. The Illinois Court held this to be prejudicial error requiring reversal. The present action is distinguishable from said St. Clair case, because here there was no deliberate attempt to get immaterial and prejudicial matter before the jury, but rather an attempt to negative assumptions of fact theretofore improperly planted in the jurors' minds by the appellant.

2. Appellant assigns as error the court's failure to strike the testimony of respondents' expert witness

White who evaluated the property condemned without considering the effect of an outstanding lease upon Parcel No. 1.

At the time this action was commenced, Parcel No. 1 was subject to a lease which provided for a monthly rental of $300, and for options to renew for two additional terms of ten years each, at the same rental. Notice of exercise of the first ten year option had been given prior to trial.

In arriving at his opinion of the fair market value of Parcel No. 1, White assumed prudent management of the property and took into consideration the highest and best use to which this property could be put. He testified in detail what said use should be, and that the returns from such highest and best use would amount to $500 a month.

On cross-examination, White admitted that he did not take into consideration the 20-year lease limiting rentals to $300 a month, in arriving at his valuation. The jury was therefore fully aware that this was not one of the factors which contributed to the determination of his valuation. That his determination failed to take into consideration a fact material to value would tend to lessen the weight of his testimony, not to render it incompetent.[1] The motion to strike White's testimony on this ground was properly denied. Accord: Southern Pac. R. Co. v. San Francisco Sav. Union, 146 Cal. 290, 79 P. 961, 70 L.R.A. 221; City of Stockton v. Ellingwood, 96 Cal.App. 708, 275 P. 228; Tyson Creek R. Co. v Empire Mill Co., 31 Idaho 580, 174 P. 1004; City of Ely v. Conan, 91 Minn. 127, 97 N.W. 737; Cities Service Gas Co. v. Peak, 227 Mo.App. 515, 54 S.W.2d 482.

3. Appellant asserts as another reason why the testimony of White should have been stricken, that White in placing a money valuation upon the condemned property

[1]The record discloses that appellant's expert witness Olsen in giving his opinion of the value of this parcel likewise failed to consider the effect of the outstanding lease in basing his determination on the highest and most profitable use of the premises.

as a service station site based his testimony upon speculation and conjecture and attempted to show value in use.

Witness White had testified that the highest and best use of a portion of Parcel No. 1 was as a service station site. Whether it was error then to permit him to give a valuation of the condemned land based on speculation or conjecture as to what income could be expected from such use is immaterial under the circumstances of this case for the following reason:

In White's opinion the income from such use as a service station site would be $200 a month. On the other hand, appellant's expert witness Olsen, in his testimony placed a money valuation on this specific portion at $300 a month as a service station site. White's testimony in this respect was therefore beneficial to appellant and appellant cannot now claim prejudice therefrom.

4. At the conclusion of White's testimony, the trial court over the objection of appellant received in evidence White's written appraisal report which contained a summary of his methods of computing his valuations of the two parcels of land. Appellant claims this to be error because the report was hearsay and its admission tended to emphasize unduly White's testimony. At the time of trial appellant's two objections to the admission of this report were (1) that the report was hearsay and (2) that it had not taken into consideration the existing lease against the property. This second objection has been considered under the second assignment of error, supra, and will now be disregarded.

There is no merit to appellant's objection that this report was hearsay. Even conceding some statements were based on hearsay, the report contains no evidence in addition to that which White had already given orally, subject to cross-examination; consequently no prejudice could result. Furthermore it was offered and received in evidence solely as an aid to the court and jury in understanding the appraisal processes. For the

same reason the written appraisal report of an appellant's expert witness Chambers was received in evidence, and without objection by appellant.

Appellant's objection that the admission of the White report might tend to emphasize unduly White's oral testimony was not given as a ground of objection at the trial and therefore will not be considered at this time.

5. Appellant next contends that the court erred in permitting respondent's witness Ligon to express his opinion as to what sum of money would be required to produce the income presently received by respondents from the condemned property, because such testimony constituted an incompetent digression from the accepted measure of just compensation, which is the "market value" of the property condemned.

NRS 37.110 requires the jury to ascertain and assess the "value" of the condemned property. Art. 1, sec. 8, Nevada Constitution, provides that private property shall not be taken for public use without "just compensation" therefor.

In determining value and just compensation, evidence of the market value of the property taken is properly received. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236. This is conceded by both appellant and respondents. That this is so does not preclude the court or jury from considering other elements that can fairly enter into the question of value and which an ordinarily prudent business man would consider before forming judgment in making a purchase. In re Bainbridge–Unadilla, Part 1, State Highway No. 5013, Chenango County, 168 Misc. 407, 5 N.Y.S.2d 988. Thus it is proper to consider the rental value of the property condemned, as well as the actual rent which the property produces, because such elements of value are material in the determination of "just compensation for the land taken." Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95; State ex rel. McKelvey v. Styner, 58 Ida. 233, 72 P.2d 699; cf. Virginia and Truckee R.R. Co. v. Henry, 8 Nev. 165.

Respondents Shaddock testified without objection with respect to the rent received from the condemned land to wit $3,600 per year, and gave their opinion that just compensation for the land would be a sum sufficient to produce an annual income of $3,600 per year. With such evidence in the record it was not error to permit Ligon to testify relative to the value of an asset capable of producing an annual income of $3,600. Cf. Saunders v. State, 70 Nev. 480, 273 P.2d 970. Such evidence was given by an expert and was solely for the purpose of assisting the jury in determining the value of this asset. Appellant's witnesses themselves capitalized the net income in arriving at market value from the income approach, using a different capitalization rate. It was within the province of the jury to decide what rate if any to use after considering all of the evidence relating thereto and the reasons given for the various conclusions.

At the trial the objection to Ligon's testimony was "in regard to the competency of this witness to testify in this particular matter." If appellant meant by this that Ligon had not qualified as an expert witness appellant will find no support from the record. The evidence discloses that Ligon was Chairman of the Board of Directors of the Security Bank of Reno, which owns and operates real estate properties; that he had been associated with said bank since 1954; that he was a member of the Trust Department of said bank and chairman of its loan committee which appraised properties and determined the amount of money that should be loaned on them. With this evidence we are unable to say that the trial court erred in determining Ligon to be qualified to testify as an expert.

6. We have considered the testimony of all of the witnesses in the case and do not deem it necessary to enlarge this opinion by referring further thereto. Appellant's view to the contrary, we feel that in claiming that the trial court erred in denying appellant's motion

for a new trial on the ground that there was insufficient evidence to support the verdict is merely a complaint that the jury should have followed the opinions of its witnesses rather than those of respondents. Our conclusion is consistent with what was said by this court in the condemnation case of State ex rel. Department of Highways v. Pinson, 66 Nev. 227, 207 P.2d 1105, 1108: "All proper elements offered by any of the parties were apparently taken into consideration, and the findings as to value and damage find ample support in the evidence. We are, in effect, asked to say that the trial court was in error in accepting the testimony of respondent's witnesses rather than the testimony of appellants and their witnesses. This we cannot do."

7. Appellant's final contention of error is that the court erred in refusing to give its proposed instructions A, B, C, and D. These instructions, except for B, deal with market value, and their subject matter was adequately and correctly covered by the instructions given to which no objections were made.

Failure to give proposed instruction B[2] was proper. The first sentence thereof is confusing and does not state the law. As stated above under assignment of error No. 5, income from actual use is a relevant factor in determining value.

There being no prejudicial error, the judgment is affirmed.

MERRILL and BADT, JJ., concur.

---

[2] Instruction B: The income or productive value of an actual or contemplated use is not a measure of compensation. Profits which might be derived from devoting property to a particular purpose depend so much on conditions that cannot be foreseen that they have no competency, and are not to be considered by you.