CLARK COUNTY SCHOOL DISTRICT, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, APPELLANT, v. RICHARD MUELLER, RESPONDENT.

No. 4213

January 8, 1960                           348 P.2d 164

*George Foley,* District Attorney, of Las Vegas, for Appellant.

*Morse, Graves & Compton,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, J.:

In this action in eminent domain the plaintiff appeals from a judgment fixing the compensation to be paid to the defendant for the land taken and for damages to the remainder by reason of the severance. The purpose of the condemnation proceeding by Clark County School District is to acquire land adjacent to school property to afford further necessary school facilities.

The case was tried to the district court without a jury. Appellant's expert witnesses had assigned to the land taken (herein referred to as parcel B) an average value of $2,082 an acre. Respondent's witnesses gave an average value of $4,894 an acre. The court gave the land a value of $4,000 an acre.

To the land not taken (herein referred to as parcel D) the court assigned a value (on the same basis of $4,000 per acre) of $12,968 and found that it suffered, by reason of the severance, 66⅔ percent damage. There is some confusion whether the last item of damage was held to have resulted from damage by reason of the severance or by reason of impairment of access or both.

The total judgment awarded by reason of the foregoing findings was for an aggregate of $63,549.24, with

interest at 7 percent per annum from July 30, 1957, the date of the taking, such being the date of the order for immediate occupancy, made on motion.

Concisely stated, this appeal presents for review the propriety of the court's action in evaluating at $4,000 per acre the land taken, as well as the land not taken, and finding a depreciation in value to the extent of two thirds by reason of the severance of or impairment of access to the land not taken.

Prior to the taking, respondent had filed with the local planning board maps and plats showing a subdivision of parcel D into 16 building lots, and a subdivision of a portion of parcel B into 16 building lots and a subdivision of an additional portion of parcel B into 18 building lots. The proposed plats as filed contained a dedication of all streets upon which the lots abutted, but no offsite improvements had been made.

The errors specifically assigned by appellant are as follows: (1) in finding a $4,000 per acre valuation for parcels B and D; (2) in finding that engineering development had been approximately completed at the time of the taking of parcel B; (3) in finding that access to parcel D was severely impaired by the taking; and (4) in concluding that the severance of parcel D depreciated its value by two thirds.

Throughout the opening and closing briefs of appellant it is evident that it relies largely on the contention that the evidence does not support a finding of a $4,000 per acre valuation. On this item the learned district judge stated: "The court has considered at great length the mass of conflicting evidence received  *   *   *," and we should, in general, be justified in refusing to interfere with the lower court's resolving of such conflict. Appellant contends, however, that the trial court in resolving this conflict ignored or rejected well-recognized rules of determining value and adopted the theory of defendant's expert witnesses based upon sales of properties in no measure comparable with those here involved and based on conditions entirely irrelevant to the issue of fixing the value of both the entered and the severed parcels. Appellant first calls attention to the

eminent qualifications of its four expert witnesses. Each of them based his appraisal upon an acreage basis. One witness found a value of $1,750 an acre, the second, $2,322.86 an acre, the third, $2,000 an acre, and the fourth, $2,250 an acre. This gave the average of $2,082 an acre above mentioned, and for which appellant still contends.

It is evident from the record that the trial court did not direct either of the parties to draw findings or proposed findings, but, in its written "Decision, Findings and Conclusions," adopted its own findings. We quote the following significant part of such decision:

"Respecting Parcel B [the land taken, comprising 13.726 acres], plaintiff completely failed to establish to the satisfaction of this court, its contention as to valuation. The defendant proved that preliminary engineering work had been done, looking to the subdivision of both this parcel and parcel D [the land retained by respondent, comprising 3.242 acres, for whose severance damage was allowed] had been filed with the planning commission of North Las Vegas in 1955. When confronted with this evidence, plaintiff's experts called in rebuttal conceded that the value was increased thereby. The defendant stated, and the statement was not successfully contradicted, that the engineering and development work was halted because of the imminence of these condemnation proceedings.

"The value of parcel B, then, must be determined in the light of the highest and best use as residential development property, in process of being engineered, platted and developed, as of July 30, 1957, the date of entry. Here again, the expert appraisers who testified as to costs and value were in considerable disagreement. * * *

"Without burdening this decision by elaboration in great detail upon the reasons and factors which caused our conclusions, we have determined and find:" The court then proceeded to find the values above noted. Prior thereto the court had said: "It is plaintiff's contention * * * that all of the land [in parcels B and D] should be considered as raw, unimproved desert land,

and that values and damages should be determined accordingly. All of the expert witnesses on both sides agreed on one thing (and one thing only) : that the highest and best use that could be made of the land in parcels B and D was for residential development in the lower, middle-income bracket. At the time of taking, the parcels were almost completely surrounded by residential developments, except for the school area, and located nearby was an extensive shopping center." We may note in addition, as shown by the maps, aerial photographs, and other evidence, that just a block south of the property was a fully constructed and developed junior high school and to the east and west were further developments. All of this was apparently well located in a city of some 11,000 people. Appellant concedes "that the land was in the heart of an area where residential growth was taking place."

The defendant's expert witnesses had given a per lot appraisal of $2,500 per lot. Appellant, while not abandoning its attack on the propriety of the per acre appraisal contends that even on the per lot appraisal basis respondent's evaluation may not be accepted for several reasons :

Appellant first contends that there should be deducted additional costs amounting to two-thirds of the engineering needed to complete the lot appraisal. It had first contended that no engineering had been done. This was met by respondent's introduction of his master plat filed with the planning board showing the complete subdivision into blocks and lots, dedication of streets, showing of corners found and corners established at the center of street intersections and other points, and in addition a plat showing water distribution plan illustrating the placement of future water mains and fire hydrants and providing for their connection to the existent and adjacent water system; a plan showing the proposed locations of street lamps in the subdivision area and a system for providing for electric current to each of them; three plats showing an over-all plan indicating typical construction of concrete sidewalks,

curbs and gutters and street intersections, together with a graphic illustration of the proposed construction of these facilities; a grading plan showing the exact elevation of each corner and the center point of the individual lots within the subdivision; and a plan showing the main sewerage system as it now exists and providing for the completion thereof in order to furnish individual sewer facilities. When confronted with this evidence, two of appellant's witnesses testified that they would assign a value of $1,000 for the engineering work done. As against this, there was evidence indicating that $8,600 had been expended for engineering work (though other evidence indicated that this sum might have been $5,500), part of which was apparently for additional engineering on other parcels not here involved. As to this point we cannot say that there was not substantial evidence to support the court's finding that the engineering work had been practically and substantially completed.

Appellant contended further that, on the per lot appraisal basis, there should have been subtracted the cost of the necessary offsite improvements. As to this, however, the respondent definitely made allowance in a sum that exceeded the sum estimated by the appellant's expert witnesses for this item.

Appellant further contends that, on the per lot valuation basis, there should be deducted from respondent's valuation the sales expense of the individual lots. This may well have been the basis of the court's action in reducing the respondent's valuation of in excess of $5,000 per acre to $4,000 per acre. (Appellant's witnesses agreed on a division basis of approximately 4½ lots per acre.)

A considerable part of the briefs is devoted to questions of the basis for the evaluations placed on the property, whether by lot or by acre. We do not consider necessary a detailed consideration of the cases that have attacked this problem. Both parties presented as a basis prior sales both by acreage and by lots. Both contended for the applicability of its own basis and the inapplicability of the basis of its opponent. Each attacked the

18

sales relied on by the other as being not comparable. Much discussion was had not only as to sales of "comparable" acreages and lots in the vicinity, or more remote from the vicinity, but upon conditions of demand for building lots over high and low demand periods, financial conditions, availability of subdivision development capital, slack purchase periods, high periods of demand for rental properties, and the financial basis of loans for lot development, ranging from bank loans to an extent of 66⅔ percent of appraised value to FHA loans to the extent of 95 percent.

All of these matters were subject to the trial court's exercise of a sound discretion and we can find no abuse of the exercise of such discretion. We accordingly find no merit in this assignment.

In effect appellant contends that in fixing the fair market value of the entered land all methods of approach must under the circumstances of the case be rejected in favor of its own method and its own evidence as to the sale of acreages or of subdivided lots in the vicinity. While recognizing the general acceptance of the authorities submitted by appellant approving as the most reliable, evidence of sales of similar properties in the vicinity, we cannot accept the necessity as a matter of law of a restriction to this method. In State ex rel. Department of Highways v. Pinson, 66 Nev. 227, 207 P.2d 1105, 1108, this court said: "All proper elements offered by any of the parties were apparently taken into consideration, and the findings as to value and damage find ample support in the evidence. We are, in effect, asked to say that the trial court was in error in accepting the testimony of respondent's witnesses rather than the testimony of appellants and their witnesses. This we cannot do." Consistently with that language this court later said in State ex rel. Department of Highways v. Shaddock, 75 Nev. 392, 344 P.2d 191, that the determining of value and just compensation under evidence of the market value of the property taken,

"does not preclude the court or jury from considering other elements that can fairly enter into the question of value and which an ordinarily prudent business man would consider before forming judgment in making a purchase." This court then proceeded to approve the action of the trial court in considering the rental value of the property condemned as well as the actual rent produced by the property as "elements of value * * * material in the determination of 'just compensation for the land taken.'" The consideration by the trial court of the capitalization method was then held not to be in error. One of the cases cited in State ex rel. Department of Highways v. Shaddock, supra, was Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95, 101, in which the United States Circuit Court of Appeals held that no single measure of value may be applied rigidly and uniformly in the determination of the market value of lands but that each case must be considered in the light of its own facts. Likewise cited in the Shaddock case was In Re Bainbridge-Unadilla, Part 1, State Highway, 168 Misc. 407, 5 N.Y.S.2d 988. There all elements that might affect the fair market value of the property, including such elements as might influence a reasonably prudent person interested in purchasing it, were held properly considered. To like effect is Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236, 1245.

Appellant earnestly contends that sales to which respondent's witnesses testified occurred one, two, or three years prior to appellant's entry of these lands, and that at the time of such entry there was a depressed market as contrasted with a boom market at the time of the earlier sales. This, however, was a matter for the consideration of the trial court in which we cannot say that there was an abuse of its discretion. Baetjer v. United States, 1 Cir., 143 F.2d 391.

Appellant assigns as error the finding that access to parcel D was severely impaired by the taking of parcel

B. It may be noted however that, although the trial court did in fact make such a finding, it was not the basis of any damage awarded to respondent by the judgment.[1] Even if we concede for the sake of argument that the taking of parcel B did not impair respondent's access to parcel D, the finding of impairment of access is without prejudice to appellant.

Appellant does not claim that there was no severance of parcel D, nor does it claim that there was no damage to parcel D by reason of such severance. Its expert witness conceded that the reduced size of parcel D resulting from the severance lessened its desirability for subdivision development and he placed the actual damage resulting from such severance as one third of the value of such remaining parcel. One of respondent's expert witnesses testified definitely to a severance damage of $5,872 to parcel D. The trial court was within its province in accepting this figure. The record nowhere discloses any evidence of a greater amount of damage resulting from the severance. The court, however, found that the severance of parcel D depreciated its value to the extent of two thirds and included a judgment for damages for such severance in the sum of $8,645.24. We can find in the record no support for this excess allowance of $2,773.24.

The judgment is modified by reducing the judgment for $63,549.24 to the sum of $60,776, and as so modified is affirmed. Respondent shall have his costs in this court.

McNAMEE, C. J., and PIKE, J., concur.

---

[1]The court's precise finding was: "That the reasonable value of Parcel D as of July 30, 1957 was $12,968.00, and that the severance of this parcel caused its value to be depreciated by two-thirds; that defendant should have damages for such severance in the sum of $8,645.24."