**CONTINENTAL DEVELOPMENT CORPORATION, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 16123.

Court of Civil Appeals of Texas.

Fort Worth.

July 1, 1960.

Friedman & Brown, and Richard Lee Brown, Fort Worth, for appellant.

Will Wilson, Atty. Gen., H. Grady Chandler, Wm. R. Hemphill, Richard O. Jones, and John B. Webster, Asst. Attys. Gen., for appellee.

MASSEY, Chief Justice.

This is a condemnation case in which the only question involved is the amount to be paid by the State to the owner because of property taken as of September 4, 1959. The appellant, Continental Development Corporation (Jack York, President, and Tom E. Purvis, Jr., Secretary-Treasurer), appealed from the Commissioners' award of $30,000, filed July 30, 1959, and after trial in the County Court at Law of Tarrant County, appealed from judgment therein entered in the amount of $31,500.

Judgment affirmed.

The land in question comprises approximately nine (9) acres out of a 118-acre tract purchased by the appellant Company as "raw" land in December of 1955, for approximately $129,000. A plat of the aforesaid acreage was filed of record February 29, 1956, as Carver Heights, a subdivision of the City of Fort Worth. On said plat the approximate 9 acres were shown as Blocks 27 and 28, being the only blocks of the subdivision which were not broken down into lots, and these blocks were divided by a street dedicated to the public incident to the subdivision of Carver Heights.

It was anticipated at the time that Block 27 and Block 28 would be taken by the State for highway purposes, specifically what was planned to be the Southeast Freeway Loop. Subsequently, after the promotion of the parts of the subdivision for homes had become a pronounced success, the appellants, on March 14, 1958, recorded a plat of the two blocks in question broken down into lots. Said action left Block 27 unchanged but divided Block 28 into two blocks, designated as Blocks 28–A and 28–B, with a street designated as Vel Drive intervening. No work was done on the ground, and said Blocks 27, 28–A and 28–B remained a "paper" subdivision. The action taken in platting them into Vel Drive and into lots occurred after officials of the appellant Company had failed to reach an agreement with the State Highway Department relative to the amount that would be paid for the property.

On July 7, 1959, over a year later, the State filed its petition for condemnation, describing the property to be condemned as "All of Block 27 * * * consisting of lots one through five, inclusive, * * * all of Block 28–A * * * consisting of lots one through fifteen * * * and all of Block 28–B * * * consisting of lots one through thirty-nine, inclusive, * * *." In other words, fifty-nine (59) lots and Vel Drive were platted upon what was originally Blocks 27 and 28 filed of record on February 29, 1956, as a part of the Carver Heights Subdivision, and it was so replatted that the State described the property in the condemnation proceedings.

Upon the trial, the first plat was introduced without objection, but upon the appellant's offer of the second plat, or replat, it was met with an objection as being nothing but a "paper" plat filed and recorded but without any subsequent activity with reference to the property in question. The attorney for the appellant pointed out that the pleadings of the State described the property condemned by lot and block as per the second plat, and then stated, "we offer it into evidence to designate the property subject to condemnation and to show the area that is being condemned." The State's attorney stated he had no objection to the same as so offered. The court limited the purposes for which the plat might be considered as admissible in accordance with the language quoted and ordered it received. There seems to have been no objection to such ruling on the part of the court and no "exception" was taken, at least at the time the exhibit was received. It could not be said that it is apparent in the record that appellant desired to tender the plat for a purpose other than stated.

During the course of the trial, evidence in behalf of the State was received over the objection of the appellant relating to values of the condemned property, opinions as to which were based in whole or in part upon sales of nearby land described as the Hicks property and the Duke property, which land appellant contends was not shown to have been comparable to that condemned. Further evidence was received, over objection, as to what Tom E. Purvis, Jr., and Jack York, officers of the appellant Company, paid for the Hicks land at about the same time the petition in condemnation was filed by the State. Additionally, appellant was denied the right to refer to the fact that the condemned property had been subdivided into lots, and to lot and block numbers. It also was denied any right to introduce evidence of a probable zoning change to commercial on part of the condemned property, and to introduce evidence as to the consideration paid for the purchase of individual lots in Carver Heights.

Relating to the matter of the appellant's having been denied leave to introduce evidence of a probable zoning change which would result in making a small part of the condemned property E-Commercial under the Zoning Ordinance of the City of Fort Worth, rather than for family residential purposes, as it was zoned at the time the property was taken by the State,

it is to be noted that the evidence proffered by the appellant was introduced before the court as a part of a bill of exceptions because of the exclusion of the evidence. It can be assumed that the appellant hoped to show an enhanced value of that part it believed should have and would have been changed to E-Commercial but for the condemnation. In introducing the evidence so that the court could determine whether or not said evidence should be admitted before the jury, and before the ruling of exclusion, the appellant never at any time offered testimony that a commercial use would be the highest and best use of that part of the condemned property to which its evidence related, nor did it offer any testimony to the effect that there would be any enhancement in value of such part or of the entire condemned area in the event of a change in zoning, or as of the time of the "taking" by the State because of any reasonably probable change to commercial within a reasonable time. Based upon the statements of Judge Calvert in the case of City of Austin v. Cannizzo, 1954, 153 Tex. 324, 267 S.W.2d 808, albeit constituting dicta, we are of the opinion that appellant's evidence, if produced before the jury, would not have been sufficient to entitle it to go further and introduce testimony of the value of the property, or any part thereof, based upon a "prospective zoning change". In any event, it is not to be doubted that the denial of appellant's request to introduce the evidence before the jury, plus evidence of value for purposes other than residential, could not constitute an abuse of discretion on the part of the trial court.

■ It necessarily follows that if we are correct in holding that such evidence was properly rejected and withheld from the jury appellant could not have been entitled to the definition of the term "market value" which Judge Calvert said (in the Cannizzo case) would be proper in the event it was shown that the property was adaptable for a use other than that for which it was zoned at the time of the "tak-

ing", and which use it was or in all reasonable probability would have become available within the reasonable future. The court did not err in denying appellant's request for the definition of the Cannizzo case and in charging the jury by use of the usual and customary language defining "market value" in condemnation cases.

■ The court also refused the appellant's specially requested issues which inquired of the jury the "market value" of Blocks 27 and 28 in separate issues, and overruled appellant's exception to the submission of the single special issue inquiring as to the value of the property condemned. That the court submitted the single special issue upon the value of the condemned property could not have prejudiced the appellant. Under the evidence the jury would have been entitled to arrive at the value of Blocks 27 and 28 together or separately, and if separately arrived at the jury would have been required to total the two separate figures and write the same as its answer to the special issue. The jury was as competent to state the ultimate total as would have been the judge in making any necessary addition of figures which might have been returned as the jury's answers had separate special issues been submitted.

■ We do not believe the court erred in excluding the appellant's proffered testimony as to values by lot and block numbers within the blocks wholly belonging to appellant, or related evidence relative to the blocks having been platted into lots, or in excluding evidence showing the amount paid as consideration for lots in other blocks proximate to those condemned. Where the property condemned is a part of a single tract of land, all of which is owned by a person or persons, its value and the value of the part condemned is determinable as an entirety, or in any event by substantial parcels, in instances where there is a variation in value of such parcels. Where there is no occasion to consider the property by parcels, it should be and is properly considered in the aggregate and

not considered as divided into lots, particularly where such is tentative or speculative or prospective, and where there has been no actual division. Silliman v. Gano, 1897, 90 Tex. 637, 39 S.W. 559, 40 S.W. 391; Minyard v. Texas Power & Light Company, Tex.Civ.App., Fort Worth, 1954, 271 S.W.2d 957, writ ref. n. r. e., and cases cited.

■ One of appellant's points of error was based upon the complaint that in a question asked a witness the attorney for the State "assumed" the number of acres of appellant's property being condemned. This occurred at a time when there had been no prior evidence thereof adduced in the presence of the jury. It is noted, however, that exhibits theretofore introduced into evidence by the appellant included plats which showed dimensions of the condemned property. From said dimensions the acreage was readily calculable by the jury, and the number of acres "assumed" in the question of the State's attorney was not misleading or incorrect. Such could not have been error.

■■ On the matter of the State's evidence relative to the Hicks and Duke properties, one lying almost adjacent to the condemned property to the southeast thereof and one lying immediately to the southwest thereof, and both in tracts which had not been subdivided either on the ground or on paper, it is to be observed in the evidence that except for the matter of practicability of sewering the Hicks property, and except for rather simple extension of other nearby utility lines, both were comparable to the property condemned. We believe that the showing by the State's witnesses of their estimates as to value of the condemned property having been in part based upon the consideration paid for such nearby property, at times proximate to the date of the State's "taking", was proper and that their testimony was not inhibited because thereof. Admissibility of such evidence cannot be determined by any hard and fast rule but rests largely in the discretion of the trial court. 17 Tex.Jur., p. 436, "Evidence—Civil Cases", sec. 160, "Value", "In General"; 2 McCormick and Ray, Texas Law of Evidence, 2d. Ed., p. 371, "Circumstantial Evidence", "Similar Acts and Transactions", sec. 1524, "Sales of Similar Property to Evidence Value"; 32 C.J.S. Evidence § 593, p. 444, "On Issue as to Value".

The same thing would be true as to the evidence relative to sales in Eastwood Addition, which addition is more than a mile southwest of the condemned property. We believe the determination as to the admissibility thereof was within the sound discretion of the trial court and that there was no abuse on its part in receiving the same.

■ The appellant complained because the court permitted the State's attorney to require of a witness who was an officer for appellant to state on cross-examination the amount paid per acre for the 118 acre tract (out of which the property condemned was a part) when it was acquired some four years before the State's "taking" of the condemned property. It is to be remembered that the testimony was elicited on cross-examination from a witness who had previously testified on direct examination as to the value of the property at the time it was taken. Furthermore, it has been held that such evidence would ordinarily be an element to be considered in a condemnation case, and in any event would not constitute reversible error. Reeves v. City of Dallas, Tex.Civ.App., Dallas, 1946, 195 S.W.2d 575, writ ref. n. r. e. In the instant case, we do not believe the transaction was too remote to be admissible. The monetary "inflation" which occurred between 1954 and 1959 is a matter of common knowledge and the record was rather complete upon the development in the vicinity of the condemned property which enhanced its value for residential purposes. All of these matters were proper to be taken into consideration by the jury along with the expert testimony upon value.

In a final point the appellant contends that in the event the individual errors are in themselves not such as warrant reversal of the judgment below, the cumulative effect thereof was such as to be reasonably calculated to cause and probably did cause the jury to return a verdict contrary to what its action would have been but for the errors, and that in view of Texas Rules of Civil Procedure, rule 434, the cause should be remanded for another trial. We are not of the opinion that there were any individual errors. If we are wrong in this, certainly there were no errors which individually or collectively resulted in such harm to the appellant as would require a reversal of the trial court's judgment.

Affirmed.