ANDREA TACCHINO AND MARIA TACCHINO, HUSBAND AND WIFE, REPUTED OWNERS OF RECORD, ET AL., APPELLANTS, *v.* THE STATE OF NEVADA, ON RELATION OF ITS DEPARTMENT OF HIGHWAYS, RESPONDENT.

No. 6793

A. TACCHINO, ALSO KNOWN AS ANDREA TACCHINO, REPUTED OWNER OF RECORD, APPELLANT, *v.* THE STATE OF NEVADA, ON RELATION OF ITS DEPARTMENT OF HIGHWAYS, RESPONDENT.

No. 6794

April 18, 1973 508 P.2d 1212

[Rehearing denied June 12, 1973]

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* of Reno, for Appellants.

*Robert List,* Attorney General, and *Melvin L. Beauchamp,* Deputy Attorney General, Assistant Counsel, Department of Highways, Carson City, for Respondent.

**OPINION**

By the Court, THOMPSON, C. J.:

The State commenced separate actions in eminent domain to condemn property owned by Andrea and Maria Tacchino. The actions were consolidated for trial and the jury returned its verdict for $396,402.28 in one case, and for $182,976.98 in the other. By this appeal the Tacchinos contend that the district court committed prejudicial error when, by pretrial order, it precluded them from offering certain evidence bearing upon fair market value. In our view the preclusive ruling should not have been made, and since it strikes the very heart of the cases, we reverse the judgments and remand for a new trial. Other assigned errors need not be considered.

The property to be condemned consists of all of Blocks "A" and "D" comprising 9.838 acres, and a portion of Block "E" comprising 4.205 acres, and is located within the Tacchino Industrial Park. The property is zoned M–1 which is industrial type zoning and may be used for almost any purpose except single family residences. The Tacchinos acquired the property many years ago and used it as farm land. In 1953 they decided to subdivide their property and contacted the Regional

Planning Commission and were assisted by one of its staff in the preparation of a tentative map for subdividing the property into lots. An engineer-surveyor was then employed to prepare a tentative plat of the subdivision showing boundaries, topography, streets, blocks and lots. That plat was approved by the Regional Planning Commission in April 1954. A final subdivision map was then prepared for recordation. It received the approval of the Commission and the City of Reno and was filed with the County Recorder of Washoe County on January 15, 1955. Streets have been cut and graded, and some sewers and storm drains installed. The highest and best use of the property to be condemned is conceded to be for industrial purposes.

The Tacchinos wished to show the value of the condemned property on a lot basis which would have established a higher market value than that shown by evaluating the property as a whole. That approach to the ascertainment of value was ruled out by the district court as to speculative and conjectural. It is to this point that we address this opinion.

1. Private property shall not be taken for public use without just compensation having been first made or secured. Nev. Const. art. 1, § 8. The word "just" is used to intensify the meaning of the word "compensation" and conveys the idea that the equivalent to be rendered for the property taken shall be real, substantial, full and ample. Virginia and Truckee R. R. Co. v. Henry, 8 Nev. 165, 171, 172 (1873); Urban Renewal Agency v. Iacometti, 79 Nev. 113, 128, 379 P.2d 466 (1963); Dep't of Highways v. Campbell, 80 Nev. 23, 32, 388 P.2d 733 (1964).

In line with this underlying concept we have ruled that prejudgment interest must be paid to the condemnee when the taking occurs before judgment. Saunders v. State, 70 Nev. 480, 485, 273 P.2d 970 (1954). And, in State v. Shaddock, 75 Nev. 392, 398, 344 P.2d 191 (1959), the court wrote: "In determining value and just compensation, evidence of the market value of the property taken is properly received. This is conceded by both appellant and respondents. That this is so does not preclude the court or jury from considering other elements that can fairly enter into the question of value and which an ordinarily prudent business man would consider before forming judgment in making a purchase." The standard just quoted was reaffirmed in Clark Co. School Dist. v. Mueller, 76 Nev. 11, 19, 348 P.2d 164 (1960), a case where the trial court received per-lot appraisal evidence of residential property

concerning which preliminary engineering work had been done looking to a formal subdivision.

One inevitably must conclude that the constitutional command for the payment of just compensation can be obeyed only by assuring the property owner that our courts will receive all evidence fairly bearing upon value.[1]

2. The State pursuaded the district court that expert witnesses should not be permitted to arrive at their opinions of the fair market value of the property by carving it up into lots, estimating the value of each lot, and then estimating the value of all lots together. This, because valuation must be based upon what a willing purchaser will pay for the whole at the time of the taking and not on what a number of purchasers might be induced to pay in the future for the land in small parcels.

There is solid support for this rule when the land is undeveloped and the subdivision is imaginary or hypothetical. Department of Highways v. Schuloff, 445 P.2d 402 (Colo. 1968). Indeed, some courts so limit expert testimony when the owner has had a subdivision plat prepared or filed for record, or has been systematically developing the tract in parcels or units. City of Caldwell v. Roark, 437 P.2d 615 (Idaho 1968), and Continental Development Corporation v. State, 337 S.W.2d 371 (Tex.Civ.App. 1960), are illustrative.

In our view, those cases and others from several jurisdictions applying the same rule, improperly restrict and limit testimony of qualified appraisers, and are not compatible with the conceptualistic expressions of our court in Virginia and Truckee R. R. Co. v. Henry, Dep't of Highways v. Campbell, State v. Shaddock and Clark Co. School Dist. v. Mueller, to which we have already referred.

---

[1] In Almota Farmers Elevator & Whse. Co. v. U.S., 409 U.S. 470 (1973), the question was: "Whether, upon condemnation of a leasehold, a lessee with no right of renewal is entitled to receive as compensation the market value of its improvements without regard to the remaining term of its lease, because of the expectancy that the lease would have been renewed." Held: The concept of "just compensation" is measured by what a willing buyer would have paid for the improvements, taking into account the possibility that the lease might be renewed as well as that it might not. The Court of Appeals decision was reversed because it failed to recognize the possibility of a renewal of the lease; a factor which a willing buyer would have considered.

Our Nevada decisions are, we think, in harmony with the philosophy of the Almota case.

A qualified witness should be allowed to testify to the different factors which a well-informed buyer would use in arriving at a price he would pay for the land. Iske v. Metropolitan Utilities District of Omaha, 157 N.W.2d 887 (Neb. 1968). The potential income to be derived from the sale of subdivided lots, properly discounted to show present value, is a factor and relevant to a determination of market value, since sophisticated investors make decisions on the basis of income capitalization. Dash v. State, 491 P.2d 1069 (Alaska 1971); Iske v. Metropolitan Utilities District of Omaha, supra; In re Appropriation for Hwy. Purposes of Lands, 239 N.E.2d 110 (Ohio App. 1968); State Highway Commission v. Lee, 485 P.2d 310 (Kan. 1971). The reasoning of these cases accommodates the constitutional concept of just compensation and tends to assure the property owner that he will receive a full and fair trial of that issue.

Reversed and remanded for a new trial.

Mowbray and Gunderson, JJ., concur.

Zenoff, J., with whom Batjer, J., agrees, dissenting:

The property involved was best suited for industrial uses and had been divided into a number of "blocks" for industrial subdivision purposes. During the trial the Tacchinos presented evidence tending to show their intention to further subdivide the "blocks" into "lots" and the initial steps taken in pursuance of that plan. They contend that they had an active subdivision, that the use of their land for subdivision purposes was not remote or speculative and that therefore evidence as to the number and value of the lots into which the property could be divided is admissible. The Tacchinos readily admitted that industrial property, such as theirs, is not conducive to being subdivided into equal lots because of the varying requirements of prospective industrial purchasers. In light of this admission it is curious that they now contend they should have been allowed to present evidence of valuation based upon the number of lots into which the property could have been divided.

The Tacchinos, in spite of the order preventing such evidence, were somehow successful in getting into evidence their Exhibit No. 2 which was a tentative plat prepared in 1953 showing a possible plan to develop the property and their Exhibit No. 3 which likewise was a tentative plat. Both of these exhibits showed how the blocks in question could have been

broken down into lots for purposes of the proposed subdivision. In addition there was much testimony that smaller parcels command a greater price per square foot than larger parcels.

Evidence of the possible breakdown of the parcels into lots may be viewed as offered for two possible purposes: (1) to show the adaptability of the land for subdivision use, or (2) to assist the jury in arriving at the valuation of the condemned property.

1. When the land involved is readily adaptable to subdivision purposes that fact may be taken into consideration in fixing its market value, City of Medina v. Cook, 418 P.2d 1020 (Wash. 1966), but the uses to which the land may thus be adapted must be reasonably probable and not entirely remote or speculative. People ex rel. Dept. Pub. Wks. v. Silveira, 236 Cal.App.2d 604 (1965). If, however, as in this case, the parties agree as to the highest and best uses to which the property is adaptable, such evidence is merely cumulative and could create substantial danger of undue prejudice. People ex rel. Dept. Pub. Wks. v. Princess Park Estates, Inc., 270 Cal. App.2d 876 (1969). In this case there is no dispute that the land is adaptable and suitable for an industrial subdivision and evidence thereof was properly excluded because the adaptability of the land for such use was not in issue. People v. Chevalier, 340 P.2d 598, 604 (Cal. 1959); Lower Nueces River Water Supply District v. Collins, 357 S.W.2d 449, 452 (Tex. 1962).

2. We feel the offered evidence was properly excluded if viewed as offered for the purpose of assisting the jury in arriving at the valuation of the condemned property. Evidence of what the owner might plan to do with his property is not to be considered by the jury as enhancing its market value. Redwood City Elementary School Dist. v. Gregoire, 276 P.2d 78, 83 (Cal. 1954). The owners of the land sought to be condemned are entitled to recover the value of the land at its highest and best use, but where the entire parcel of land is taken as a unit as of the time the action is commenced the proper measure of compensation is what a willing purchaser would be willing to pay for the parcel at the time of the taking, in its then condition and not what a number of purchasers might, in the future, be induced to pay for the land as divided into lots. Department of Highways v. Schulhoff, 445 P.2d 402 (Colo. 1968); City of Caldwell v. Roark, 437 P.2d 615 (Ida. 1968). If such evidence were allowed, the jury would be carried far too deeply into the realm of speculation. The jury is not to speculate as to

the kind and number of prospective industrial purchasers or the size of the lots each might require. Nor may it conjecture as to how the land could best be divided into building lots, how fast they could be sold or at what price per lot. Lower Nueces River Water Supply District v. Collins, supra.

Such improper speculation and conjecture by the jury was effectively prevented by the preliminary order entered by the trial judge. The majority's bland idioms such as "[p]rivate property shall not be taken for public use without just compensation having been first made or secured" and "[i]n line with this underlying concept we have ruled that prejudgment interest must be paid to the condemnee when the taking occurs before judgment" (citing Saunders v. State, 70 Nev. 480, 485, 273 P.2d 970 (1954)) find no disagreement in us if they are relevant to the main issue, but this case does not deal with prejudgment interest. It concerns itself solely with the propriety of certain evidence of a proposed industrial subdivision for its prospective value on a per lot basis, the admission of which amounts to nothing more than outright speculation.

Our protest is founded on cases which even Dash v. State, 491 P.2d 1069 (Alaska 1971), relied upon as authority by the majority, acknowledges as the weight of authority. See also 4 Nichols, Eminent Domain, Sec. 12.312[2] (rev. 3d. ed. 1971), referring to the cases supporting our position as being the law of the overwhelming number of jurisdictions. The majority relies on a small handful of cases which strike only a glancing blow to this issue. In fact, of the Nevada cases referred to in the majority opinion none raised our problem as an issue. In Clark County School Dist. v. Mueller, 76 Nev. 11, 19, 348 P.2d 164 (1960), while per lot and per acre valuation were presented to the trial court the propriety of the evidence was not contested.

Only Dash v. State, supra, from Alaska, can be called a true authority and in that case there was an indication that the court had available as an aid in valuation some already subdivided industrial property in the area immediately adjacent to the property in question. Justice Batjer and I resist the departure of this court from a well-settled line of authorities that would keep the complex problems of evaluation in condemnation cases within the bounds of reasonableness.

For the foregoing reasons we would affirm the judgment of the trial court.